## UNITED STATES v. RODGERS et al.

### No. 6400.

Circuit Court of Appeals, Third Circuit.

Jan. 21, 1938.

James W. Morris, Asst. Atty. Gen., and Sewall Key, Norman D. Keller, and F. A. Michels, Sp. Assts. to the Atty. Gen., J. Cullen Ganey, U. S. Atty., of Bethlehem, Pa., and Thomas J. Curtin, Asst. U. S. Atty., of Philadelphia, Pa., and Berryman Green, of Washington, D. C., for the United States.

Frederick E. S. Morrison, Thomas Reath, and Henry S. Drinker, Jr., all of Philadelphia, Pa., for appellees.

Before BUFFINGTON, THOMPSON, and BIGGS, Circuit Judges.

BIGGS, Circuit Judge.

The executors of James Macklin, deceased, recovered judgment in the court below against the United States in the sum of $3,518.96, with interest. This appeal is taken from that judgment.

The facts of the case are as follows. Upon July 6, 1927, James Macklin was the owner of 2,400 shares of stock of Pennsylvania Glass Sand Company, designated hereafter as the "1902 Company." The cost basis for determining gain or loss to James Macklin and to his estate on the sale or other disposition of this stock is stipulated to be the sum of $39,000, or $16.25 per share. By an agreement dated January 25, 1927, all of the stockholders of that company, including Macklin, severally agreed that they would sell to A. J. Fink all of the stock of the "1902 Company" owned by them for a price of $65 a share, payable in cash at any time on or before September 1, 1927.

Upon June 22, 1927, Fink, in association with others, organized another corporation, with a name identical with Pennsylvania Glass Sand Company. We will designate this latter corporation as the "June, 1927 Corporation." Upon July 5, 1927, Fink assigned to the "June, 1927 Corporation" all of his rights to purchase the stock of the individual stockholders under the agreement of January 25th, and by the terms of this assignment the "June, 1927 Corporation" assumed and agreed to perform all of the obligations of Fink under the January 25th contract.

Upon July 6, 1927, the "June, 1927 Corporation" acquired 51,677⅝₅ shares of the outstanding 80,000 shares of stock of the "1902 Company," by entering into separate agreements with some of the stockholders of the "1902 Company" whereby the obligation of the stockholders to sell their shares and the obligation of the "June, 1927 Corporation" to buy these shares, as the assignee of Fink, were modified.

Each of these contracts contained three clauses. The first clause provided that instead of certain shares of the "1902 Company" being acquired for cash by the "June, 1927 Corporation," that corporation would deliver to the depository for the account of the stockholder, an obligation of the "June, 1927 Corporation" in a stated principal amount, and that this obligation upon the completion of a contemplated merger between the "1902 Company" and the "June, 1927 Corporation" would be redeemed in the first mortgage bonds of the consolidated company. The second clause of the contract provided that each stockholder executing it should retain certain shares of stock of the "1902 Company" which he should vote in favor of the agreement of merger and consolidation whereby the consolidated company was to be created, and for the shares thus

voted the stockholder should receive shares of the $7 cumulative preferred stock of the consolidated company in a stated ratio. The third clause of the contract provided that all of the remaining shares of the stockholder should be purchased by the "June, 1927 Corporation" at the rate of $65 per share "pursuant to the agreement dated January 25, 1927, with A. J. Fink. * * *"

Omitting the provisions of the first clause referred to, Macklin executed a contract with the "June, 1927 Corporation" substantially similar to that described. By its terms he agreed to sell to the "June, 1927 Corporation" 1,026$^{10}\!/\!_{65}$ shares of the stock of the "1902 Company" out of his total holding of 2,400 shares at a price of $65 per share. He also agreed to vote 1,373$^{55}\!/\!_{65}$ shares in favor of the agreement of merger whereby the consolidated company was to be created, "under which," in the terms of the contract, "the Stockholder will receive in lieu of said shares 950 shares of the $7 cumulative preferred stock of the corporation to be formed by such merger. * * *" By the agreement the "June, 1927 Corporation" also agreed to acquire a majority of the stock of the "1902 Company" and to vote the stock so acquired in favor of the consolidation.

Upon July 6, 1927, Macklin sold and delivered to the "June, 1927 Corporation" 1,026$^{10}\!/\!_{65}$ shares for the agreed price of $65 per share. The remaining 1,373$^{55}\!/\!_{65}$ shares were voted by him in favor of the merger which took place upon July 13, 1927. After Macklin's death, these 1,373$^{55}\!/\!_{65}$ shares were exchanged by his executors, and his estate received from the consolidated corporation 950 shares of the $7 cumulative preferred stock of that corporation.

The executors of Macklin's estate paid tax due upon the gain of $49,572.64, created by the sale of the 1,026$^{10}\!/\!_{65}$ shares. The Collector, however, treating the sale and exchange of the shares as one transaction, whereby the entire gain from both sale and exchange should be recognized and taxed, assessed a tax deficiency in the sum of $2,979.68. This additional sum, with interest, was paid under protest by Macklin's executors, and the suit at bar was brought pursuant to the controlling provisions of the Revenue Act of 1926 for its recovery. The pertinent statutory provisions are as follows:

"Sec. 203. (a) Upon the sale or exchange of property the entire amount of the gain or loss, determined under section 202 shall be recognized, except as hereinafter provided in this section.

"(b) * * * (2) No gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization. * * *

"(d) (1) If an exchange would be within the provisions of paragraph (1), (2), or (4) of subdivision (b) if it were not for the fact that the property received in exchange consists not only of property permitted by such paragraph to be received without the recognition of gain, but also of other property or money, then the gain, if any, to the recipient shall be recognized, but in an amount not in excess of the sum of such money and the fair market value of such other property. * * *

"(h) As used in this section and sections 201 and 204—

"(1) The term 'reorganization' means (A) a merger or consolidation. * * *

"(2) The term 'a party to a reorganization' includes a corporation resulting from a reorganization." 44 Stat. 12.

The appellees contend that the sale of the 1,026$^{10}\!/\!_{65}$ shares was one distinct transaction, and that the exchange of 1,373$^{55}\!/\!_{65}$ shares was another and entirely separate transaction, consummated pursuant to the contract of July 6th. They contend that the transaction last referred to, being separate and distinct, falls within the provisions of subsection (2) of paragraph (b) of section 203, quoted above. The appellant, upon the other hand, contends that the sale and exchange of the shares referred to constituted one transaction, and that this transaction being within the provisions of subsection (1) of paragraph (d) of section 203 of the Revenue Act, the total gain therefrom is taxable.

Were there one or two transactions? By the contract of January 25th, Macklin agreed to sell all of his stock in the "1902 Company" to Fink. Though the contract of July 6th makes reference to modifications of the January 25th contract, none the less the rights of the parties are to be determined by the July 6th contract alone. It is a new contract creating new

obligations and new rights in the parties while disposing of the rights and liabilities of the parties under the contract of January 25th.

The acts required to be done by the respective parties to the July 6th contract constitute but one transaction. The taxpayer agreed in a single contract that he would dispose of all of his shares, some for cash and others in exchange for stock, precisely as in his earlier contract he agreed to dispose of his entire holding for cash. Had the stock for exchange been furnished by the same corporation as that which paid the cash, we conceive that the appellees would not urge the existence of two separate transactions. The fact that the "June, 1927 Corporation" supplied cash and the consolidated corporation, stock, imports little. The July 6th contract may be construed as creating an obligation in the "June, 1927 Corporation" to cause the stock of the consolidated corporation to be delivered for exchange as contemplated in the contract. The consolidated corporation assumed all of the obligations of the "June, 1927 Corporation," and if a duty rested upon the "June, 1927 Corporation" to procure the exchange of Macklin's stock, this duty was expressly assumed by the consolidated corporation. Certainly a legal obligation was imposed upon the consolidated corporation to exchange its stock for Macklin's stock in accordance with the terms prescribed by the July 6th contract, and the "June, 1927 Corporation" performed acts similar to those of a factor for the consolidated corporation in procuring Macklin's stock, as well as that of the other stockholders, for exchange. Under such circumstances no strict regard for corporate entities is required.

The fact that some time intervened between the date of sale and the date of exchange is immaterial. As stated by the Supreme Court in Moore v. New York Cotton Exchange, 270 U.S. 593, 46 S.Ct. 367, 371, 70 L.Ed. 750, 45 A.L.R. 1370, " 'Transaction' is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship." In the case at bar, sale and exchange were both the result of the carrying out of the contract of July 6th, and the exchange bore a logical relation to the sale.

No case cited upon the briefs presents facts precisely similar to those in the case at bar, and we can find no authority which squarely supports the views contended for by the parties. In our opinion, however, the fair conclusion which must be drawn from all that transpired is that Macklin disposed of his entire holding of stock in one transaction, and the entire gain therefrom must be treated as subject to tax in the manner prescribed by the statute.

So holding, we reverse the judgment of the court below and remand the cause for further proceedings in accordance with this opinion.