THE ARTOPHONE CORPORATION, a Corporation, Appellant, v. RALPH W. COALE, Assessor of the City of St. Louis; FORREST SMITH, State Auditor and WILLIAM F. BAUMANN, Collector of the City of St. Louis.—133 S. W. (2d) 343.

Division Two, November 22, 1939.

*Lewis, Rice, Tucker, Allen & Chubb, Robert T. Burch* and *Philip A. Maxeiner* for appellant.

346

*Roy McKittrick,* Attorney General, and *Russell C. Stone,* Assistant Attorney General, for respondent.

*Cobbs, Logan, Roos & Armstrong, Borders, Warrick & Hazard, David Baron, Wm. F. Fahey, A. B. Frey, E. A. B. Garesche, Nagel, Kirby, Orrick & Shepley, Sullivan, Reeder & Finley, Karal A. Korngold, Allen C. McReynolds* and *John C. Vaughan, amici curiae.*

COOLEY, C.—Plaintiff, a Missouri corporation, sued to abate certain income taxes assessed against it for the year 1936. Abatement of one item was allowed by the circuit court and is not now in controversy. The court refused to abate $102.14 of the tax complained of and from that judgment plaintiff appealed. The case, so far as concerns the item of tax involved on this appeal, was submitted on the following agreed statement of facts:

"It is hereby agreed:

"That during the taxable year 1936 the plaintiff's only places of business were its principal office, warehouse and service department situated in the City of St. Louis, Missouri, and a branch office, warehouse and service department situated in the City of Kansas City, Missouri; that it was engaged in the business of distributing electrical appliances, which business consisted of the purchase by plaintiff of Philco radios from the manufacturer thereof, situated in Philadelphia, Pennsylvania, and the resale thereof by plaintiff in a certain territory comprising parts of Missouri, Kansas, Illinois and Kentucky, also the purchase by plaintiff of Easy washing machines and Stewart-Warner refrigerators from the respective manufacturers thereof, situated in Syracuse, New York, and Chicago, Illinois, respectively, and the resale thereof by plaintiff in certain territories comprising parts of Missouri, Illinois and Kentucky; said business also included the rendering of repair services on radios, washing machines and refrigerators in Missouri, Illinois and Kansas; that all of the income sought to be taxed arose by virtue of the conduct of such business; that plaintiff was not domiciled or domesticated in any state other than Missouri; that the plaintiff owned no real estate, and that all of its personal property was located, owned and used in the State of Missouri, with the exception that trucks owned by plaintiff were used by it in rendering such repair services in states other than Missouri. That all of the executive officers of the business of plaintiff were located in the City of St. Louis, Missouri, where all of the operations of said business were managed and controlled.

"That plaintiff maintained traveling salesmen who were sent from its office in the City of St. Louis, Missouri, to states other than Missouri to secure orders for the sale of the said goods; all of such orders were taken subject to approval at the plaintiff's office in the City of St. Louis; thereafter such goods were shipped by rail or by trucks, owned by others but operated under a contract with plaintiff, to the

purchasers in states other than Missouri from plaintiff's warehouses in the State of Missouri, or were shipped directly by the manufacturers of the goods in states other than Missouri to the purchasers in states other than Missouri upon orders placed by the plaintiff from its office in the City of St. Louis, Missouri. That all traveling salesmen were under the guidance, direction and control of the plaintiff in its office in the City of St. Louis, Missouri; that all of the prices of goods sold were determined in its office in St. Louis, Missouri; that the purchase price from all sales of goods to purchasers in states other than Missouri was due and payable at plaintiff's office in the City of St. Louis, Missouri. In some instances sales of goods were made to persons residing in states other than Missouri by correspondence or by telephone and the purchase price therefor was due- and payable at plaintiff's office in the City of St. Louis, Missouri; that in the said calendar year 1936 the sales made by plaintiff to purchasers in states other than Missouri in the manner hereinabove described amounted in the aggregate to the sum of $762,215.74 and are the sales mentioned in the plaintiff's petition and shown on plaintiff's Missouri income tax return for the year 1936 as 'sales or transactions partly within and partly without the State of Missouri,' it being understood, however, that defendants do not admit that such sales are sales or transactions partly within and partly without the State of Missouri within the meaning of Article 20, Chapter 59, Revised Statutes of Missouri 1929, as amended.

"That plaintiff did not pay an income tax to any state other than Missouri for said calendar year 1936.

"That prior to January 1, 1933, the former State Auditor charged with the enforcement of the State Income Tax Act interpreted the act under the facts as presented in this stipulation to permit allocation as provided for under the provisions of the State Income Tax Act; that subsequent to January 1, 1933, the present State Auditor, who was also charged with the enforcement of the State Income Tax Act, has interpreted the State Income Tax Act, contrary to his predecessor in office, under the facts as herein stipulated, to mean that no allocation is permitted under the provisions of the State Income Tax Act; that in answer to inquiry duly submitted to the State Auditor, he, by letter dated March 28, 1938, informed the person who inquired about his interpretation of the act, and said that under the facts as herein stipulated no allocation is permitted, and thereafter, in June, 1938, the State Auditor issued the ruling which is attached hereto and made a part hereof; the correctness of which ruling, however, is not admitted by the plaintiff."

It is further admitted by the pleadings that plaintiff's total net income from all sources for the year 1936 was $29,976.19; that plaintiff duly made out and filed its income tax return for that year upon a form issued by defendant State Auditor, reporting its items of sales,

gross income and claimed deductions, admittedly correct, and duly paid the income tax assessed in accordance therewith, if the allocation claimed by plaintiff on account of sales as being "transactions" partly within and partly without the State is allowable. If the allocation is not permissible the additional assessment of $102.14, here in controversy, is correct, resulting that the circuit court's judgment should be affirmed. If it is permissible the judgment must be reversed.

The "ruling" of defendant State Auditor, referred to in the above quoted agreed statement of facts, is to the effect, that a domestic corporation *having no branch office* outside of this State is taxable here on its entire net income, but does not hold that it is so taxable if it has a branch office in another State.

By paragraph third of Section 10115, Revised Statutes 1929 (Mo. Stat. Ann., p. 8080), it is provided that a tax shall be levied upon, assessed against and paid by every corporation organized or existing under the laws of this State (domestic corporations), and by every corporation not organized under the laws of this State but licensed to do business in this State (foreign corporations) [excepting certain corporations whose taxation is otherwise specifically provided for and not here pertinent], "in such per centum, as now or hereafter provided, of the net income from all sources in this state during the preceding year. Income shall include all gains, profits and revenues from the transactions of the business of the corporations in this state, including gains, profits and revenue from the doing in this state of such portions of each transaction of the business of the corporation which transaction is partly done in this state and partly done in another state or states, and all other income from sources in this state as income is otherwise defined." Said paragraph of that section then provides for deduction of the "ordinary and necessary expenses incurred in this state to produce said income," losses sustained "in this state" including depreciation, etc., "of property in said business in this state and debts arising from said business in this state" ascertained to be worthless and charged off during the year. Certain other deductions are provided for, such as taxes, etc., and then follow these provisions:

"*Provided,* that where income results from a transaction partially in this state and partially in another state or states, and income and deductions of the portion in the state cannot be segregated, then such portions of income and deductions shall be allocated in this state and other state or states as will distribute to this state a portion based upon the portion of the transaction in this state and the portion in such other state or states; *Provided, however,* the taxpayer may elect to compute the portion of income from all sources in this state in the following manner: The net income from all sources shall be determined as now or hereafter may be provided, excluding therefrom

the figures for the operation of any bridge connecting this state with another state. The amount of sales which are transactions wholly in this state shall be added to one-half of the amount of sales which are transactions partly within this state and partly without this state, and the amount thus obtained shall be divided by the total sales or in cases where sales do not express the volume of business, the amount of business transacted wholly in this state shall be added to one-half of the amount of business transacted partly in this state and partly outside this state and the amount thus obtained shall be divided by the total amount of business transacted, and the net income shall be multiplied by the fraction thus obtained, to determine the proportion of income to be used to arrive at the amount of tax, and the amount of tax shall be such per centum thereon as may now or hereafter be provided. The investment or reinvestment of its own funds, or sale of any such investment or reinvestment, shall not be considered ·as sales or other business transacted for the determination of said fraction: *Provided,* that any corporation other than railroads organized in this state or granted a permit to operate in this state for the transportation or care of passengers shall report its gross earnings within the state on intrastate business and shall also report its gross earnings on all interstate business done in this state which report shall be subject to inquiry for the purpose of determining the amount of income tax to be paid by said corporation.''

■ Appellant contends that the legislative intent as shown by the language of Section 10115, supra, was to avoid any discrimination between domestic and foreign corporations, and:—(1) To impose a tax upon the net income of every corporation ''from all sources in this state;'' (2) To impose no tax on income of any corporation, domestic or foreign, from sources wholly without this State; and (3) To impose a tax on that portion of the net income of every corporation, domestic or foreign, which represents the portion done in Missouri of transactions of the corporation which are partly done in this State and partly done in another state or states. With this contention we agree. In this connection we observe that when our first income tax law was adopted in 1917—Laws 1917, page 524—it imposed a tax on the total net income of domestic corporations from all sources while imposing a tax on foreign corporations doing business in this State upon only the net income received from ''sources within this state.'' That law failed to make provision for determining the taxable net income of foreign corporations ''from sources within this state.'' To remedy that defect the law was amended in 1919—Laws 1919, page 718—but it still taxed the entire net income of domestic corporations from all sources while, as to foreign corporations, taxing only the net income from sources within this State, resulting that foreign corporations paid to Missouri income taxes on only their business transacted in this State, while domestic corpora

tions paid on the net income from all their business both intrastate and interstate. In 1927 the law was rewritten—Laws of Missouri, 1927, page 475—one of the purposes of the 1927 act, as declared in its title, being the elimination of "certain discriminations between residents and non-residents and between individuals and corporations." By the terms of the 1927 Act a tax was imposed upon the net income of all corporations, whether domestic or foreign, "from all sources within this state, including a reasonable proportion apportioned to this state of net income derived from business partially within and partially without the state which cannot be definitely allocated." The 1927 Act further provided that when net income taxable thereunder "is so interwoven with income earned outside of the state that it cannot be definitely separated, a reasonable proportion of such total net income . . ." representing the amount earned within the State as compared with the total and inseparable net income, should be taxable, and authorized the State Auditor to prescribe rules and regulations for determining the proportion to be allocated to this State and subjected to the tax. The Income Tax Law was again amended in 1929—Laws 1929, page 423—which is the present law so far as affects the question at issue. Appellants argue that the 1929 Act accomplished what the Legislature sought to accomplish by the 1927 Act, viz., "placing the tax burden equally upon domestic and foreign corporations and providing a fair, just and workable method of allocation where a portion of the net income resulted from 'transactions partly within this state and partly without this state' " There is force in this argument.

We need not here discuss or consider the question whether or not the Legislature *could* tax the entire net income *from all sources* of a domestic corporation. The question is does the present law do so? Generally it may be said that taxing statutes are to be strictly construed in favor of the taxpayer and the fact that a particular subject of taxation, claimed to be taxed, is within the purview and intendment of the taxing statute must clearly appear from the statute so to be. "It is well established that the right of the taxing authority to levy a particular tax must be clearly authorized by the statute, and that all such laws are to be construed strictly against such taxing authority." [State ex rel. Ford Motor Co. v. Gehner, 325 Mo. 24, 29, 27, S. W. (2d) 1, 3, (3), and cases cited.] Of course "The primary rule of construction of statutes is to ascertain the lawmakers' intent, from the words of the statute if possible; and to put upon the language of the Legislature, honestly and faithfully, its plain and rational meaning and to promote its object, and 'the manifest purpose of the statute, considered historically,' is properly given consideration." [Cummins v. K. C. Pub. Serv. Co., 334 Mo. 672, 684, 66 S. W. (2d) 920, 925 (7-10).] With these principles in mind we examine the question before us.

It is plain, we think, that the original income tax law, that of 1917, did impose a tax upon the entire net income of domestic corporations from all sources, intrastate or interstate. By subsequent legislation, as pointed out above, the Legislature apparently recognized that the original law contained or permitted certain discriminations. which it sought to remove by the amendment or change of 1927, continued in principle, with clarifying provisions on this point, by later amendments. This thought is indicated by the title of the 1927 Act, and the title of an Act of the Legislature may be looked to in construing it. [See on this proposition, Glaser v. Rothschild, 221 Mo. 180, 212, 120 S. W. 1.] In rewriting or amending the law in 1927 the Legislature evidently had in mind that the then existing law made ''certain discriminations between residents and non-residents and between individuals and corporations.'' What were those discriminations which the Legislature obviously sought to eliminate? Learned counsel for *amici curiae,* in a brief filed with us, thus illustrate:—

''As stated before the 1917 and 1919 Acts discriminated against Missouri corporations. Take, for instance, two large nation-wide shoe manufacturing concerns located in St. Louis. Each is competing in the same territory in Missouri and in Missouri's vast trade area in many other states, for the same business, from the same customers. Company A has paid its charter fees we will say, to the State of New Jersey, and it is a citizen of that state. Company B has paid its charter and incorporating fees to the State of Missouri, and is a citizen of this state. Let us assume that each corporation did 90% of its business outside the state of Missouri. Corporation A then paid to the State of Missouri a tax upon only 10% of its net income, while Corporation B paid to its own government, of which it was a citizen, a tax upon 100% of its net income. It thus paid, assuming the business is equal, nine times as much tax to its own mother government as the stranger, equally protected by its laws. The discrimination is visible to the naked eye. It gave foreign corporations a tremendous competitive advantage.''

Without committing ourselves in full to all the possible implications of the above illustrative hypothesis we believe it may be suggestive of thoughts that may have been in the minds of the legislators in making the change in the law that was made in 1927, and since retained so far as concerns the question here involved. We, as a court, need not inquire *why* the Legislative branch of the government did certain things, if it had the constitutional right to do them. The question is what does the present statute mean? It taxes the net income of corporations ''from all sources in this state,'' which income is to include gains, etc., from the *doing in this State of such portion of each transaction* of the corporation's business that is done partly in this State and partly in another state. It allows deduction

of expenses incurred *in this State* in producing the taxable income; and provides for allocation, at the election of the taxpayer and in accordance with a statutory formula, where income—obviously the *taxable* income which is the subject of that tax imposing section—results from "transactions" partly within and partly without this state; and, it seems to us, in explanation and clarification of the legislative meaning of the language "sources in this state," the statute further and expressly provides for allocation, at the election of the taxpayer, of income "from all sources in this state" in the manner pointed out, viz.—"the *amount of sales* which are *transactions* wholly in this state shall be added to one half of the *amount of sales* which are transactions partly within this state and partly without this state," etc. (Italics ours.) What did the Legislature mean by "transactions" and by "*sales* which are transactions partly within this state and partly without this state?"

The word "transaction" may and often does have a broader meaning than "contract." In Scott v. Waggoner, 48 Mont. 536, 139 Pac. 454, L. R. A. 1916C, 491, 494, it is said:—"The term is not legal and technical, it is common and colloquial; it is therefore to be construed according to the context and to approved usage. . . . And so construed, it is broader than 'contract.' " In Ritchie v. Hayward, 71 Mo. 560, 562, we said that "transaction" is a more comprehensive term than "contract." To like effect see Barnard v. Weaver (Mo. App.), 224 S. W. 152, 153. And in Roberts v. Donovan, 70 Cal. 108, 113, we read that the term "transaction" is a broader one than "contract,"—"A contract is a transaction, but a transaction is not necessarily a contract." And in Moore v. New York Cotton Exchange, 270 U. S. 593, 46 Sup. Ct. 367, 45 A. L. R. 1370, 1378, we read: " 'Transaction' is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship." The above cited cases—and numerous others of like import—dealt with counterclaim statutes in which the term "transaction" was used, and of course what the courts said was said in construing those statutes and as applicable thereto. They may not be directly in point because construing statutes of a different nature but they illustrate the fact that the term "transaction" is broader than is the term "contract," construing the latter in its strict legal sense. And so we believe was its intended meaning in the statute we are construing. If by "sale" the Legislature meant the ultimate act by which the contract or agreement between seller and buyer was consummated and that the situs of such act should make the corporation subject to taxation for the entire net income resulting from such sale why the provision for allocation in case of "*sales*" which are *transactions* partly within this State and partly without this State.

It seems to be conceded by respondents that if a domestic

corporation, such as appellant, has a branch office in another state, the income resulting from sales made through such branch office would be subject to allocation under the statute, but it is contended that allocation is not permissible if the corporation does not have such branch office. We do not find in the statute language which in our opinion justifies that distinction. Suppose, for example, appellant had a "branch office" in another state, but that sales made by or through such branch office had to be reported to and confirmed by the home office and delivery of the goods ordered or authorized by said home office. Would not the effect be substantially the same, so far as concerns the situs of the sale for income tax purposes, as where a sale is made by a salesman who has no office in another state? Or suppose a *salesman* has an office in another state and through that office makes a sale, but must report it for confirmation to the home office in this State. Would that sale be a "transaction" wholly within or partly within and partly without this State, in the meaning of the statute? It seems to us that if the Legislature had intended to make a distinction such as we have above referred to it would have so indicated by clear language in the taxing statute. As we have said taxing statutes are to be construed in favor of the taxpayer, if uncertain or ambiguous.

In his "ruling" above referred to the State Auditor says:

"If a domestic corporation has a branch office located outside the State we do not take the position that the income resulting therefrom is subject to tax on 100% basis. If the Act had levied tax merely on on income from sources within the State, room would be left to argue that it did not apply to income from interstate commerce. If the Act levied the tax merely on income from sources in the State, and from income partly within and, partly without the State, some room might possibly still be left to argue that income from certain businesses is not derived partly from sources within the State, but when the Act goes further and expressly includes income from commerce, from ownership and use of real and personal property, within the State and from any source whatever, it would appear to be reasonably certain that the Legislature has done everything in its power to include income from interstate commerce."

The latter part of said quotation seems to refer to the definition of "income" found in Section 10117, Revised Statutes 1929 (Mo. Stat. Ann., p. 8091). That section defines, generally, what constitutes "income." It is argued by appellant that it does not purport to define *taxable* income, which is defined by Section 10115, supra. Section 10115 is the tax levying section of the statute. The third paragraph thereof provides for the taxation of income of corporations, and levies a tax on the net income of corporations "from all sources in this state," and after stating that income shall include gains, etc., from the "transactions" of the corporation's business "in this state,"

including profits "from the doing in this state *of such portions* of each transaction of the business of the corporation which transaction is partly done in this state and partly done in another state or states," —the language follows, "and all other income *from sources in this state* as income is otherwise defined." (Italics ours.) Following these provisions appear the provisions for deduction of expenses, losses, etc., incurred *in this state,* and the proviso allowing allocation. Section 10117 contains a general definition of "income"—not, however, therein specifically mentioned as taxable income. Paragraph one of Section 10115 levies a tax upon the net income received by *individuals* who are citizens or residents of this State "from all sources," in excess of certain deductions and exemptions. The rate of the tax upon the income in excess of allowable deductions and exemptions is specified in subdivisions a to g, inclusive, of that paragraph. Then we find this:—"Provided, that the words 'income' and 'incomes' as used in the foregoing subdivisions (a to g, inclusive) shall be applicable to and embrace income as defined in Section 10117, Revised Statutes of Missouri, 1929." We find no such reference to Section 10117 in paragraph third of Section 10115, levying the income tax on corporations. It seems to us that in Section 10115 the Legislature intended to define and point out what it meant by "sources in this state" when it provided for allocation at the election of the taxpayer of income from sales which are "transactions" partly within and partly without this State.

We have not overlooked decisions from other jurisdictions cited by counsel, construing income tax statutes. The statutes construed differ in some respects, we think, from ours and it must be remembered that, as we said in Sayles v. Kansas City Structural Steel Co., 344 Mo. 756, 128 S. W. (2d) 1046, 1054, "a slight difference in the wording of the statutes . . . may impair the value of an outside decision when attempt is made to apply it here." The question before us must be decided by interpretation of our statute. In our opinion plaintiff, on the admitted facts, was entitled to allocate its income as it did do, and the trial court erred in refusing to abate the additional item of tax complained of. The judgment is reversed and the cause is remanded with directions to the circuit court to set aside its judgment and enter judgment abating said item of $102.14 in accordance with the views herein expressed. *Westhues, C.,* absent; *Bohling, C.,* concurs.

PER CURIAM:—The foregoing opinion by COOLEY, C., is adopted as the opinion of the court. All the judges concur.