RONRICO CORPORATION, Petitioner and Appellee, *v.* TREASURER OF PUERTO RICO, Respondent and Appellant.

No. 10909. Argued June 3, 1953.—Decided November 8, 1954.

*José Trías Monge, Attorney General* and *J. C. Santiago Matos, Assistant Attorney General,* for appellant. *Fiddler, González & Nido* for appellee.

MR. JUSTICE BELAVAL delivered the opinion of the court.

This case was submitted to the former Tax Court of Puerto Rico on the following stipulation of facts:

"1.—That on March 14, 1944, the petitioner filed its income tax return for the taxable year ending December 31, 1943.

"2.—That on that same date, March 14, 1944, petitioner voluntarily paid its income tax corresponding to said year 1943 on the basis of the aforesaid return which it had prepared itself.

"3.—That on September 25, 1945, the petitioner filed before the Treasurer of Puerto Rico the following documents:

"(1) An amended income tax return for the taxable year ending December 31, 1943, deducting from its income the

amount of $22,500.00 as bonus granted to the officers of the corporation, inasmuch as said item did not constitute income.

"(2) A claim for refund in the amount of $4,500 for the year 1943 inasmuch as the net income had been reduced in the aforesaid amount of $22,500.

"4.—That the respondent, the Treasurer of Puerto Rico, on August 16, 1948, investigated petitioner's income tax returns for the years 1942 and 1943.

"5.—That as a result of said investigation, the respondent adjusted the taxable net income of the petitioner for the year 1943, allowing the aforesaid deduction of $22,500 representing a bonus for the officers of the corporation which, therefore, did not constitute income, and furthermore allowing other adjustments which reduced the net income by $4,961.79. Said redetermination or adjustment was notified to the petitioner on October 13, 1948.

"6.—That likewise, on the basis of the aforesaid investigation, the respondent, on that same date of October 13, 1948, notified the petitioner of a tentative deficiency in its income tax corresponding to the year 1942 amounting to $14,448.32. In computing this deficiency, the respondent considered the aforesaid redetermination made in the 1943 return, and consequently allowed a credit for overpayment of tax plus interest for the year 1943, of $7,030.21. Faithful and exact copies of the notice served on October 13, 1948, and its supplements are attached to the complaint and are made a part of the stipulation.

"7.—That as a result of a motion for reconsideration timely filed by the petitioner, and the corresponding administrative hearing granted by the respondent, the latter on February 23, 1949, notified said petitioner of his final decision whereby he determined an income tax deficiency of $13,888.95 for the year 1942. Faithful and exact copies of said notice and its supplements are attached to the complaint and are made a part of this stipulation.

"8.—As a result of the administrative hearing held on January 16, 1949, the respondent determined, in addition to the readjustment and allowances made in the notice of October 13, 1948, that the petitioner was entitled to and allowed the sum of $15,103.05 as an additional deduction from the net income for the year 1943.

"9.—That said item of $15,103.05 corresponded to freightage and other expenses connected with a cargo of bottles and other pertinent accessories which the petitioner erroneously considered as an ordinary expense of operation instead of an expense chargeable to the inventory of bottles, and therefore, it erroneously deducted it as an expense from its income tax return for the year 1942.

"10.—That because of the error of appreciation mentioned in the preceding paragraph, the petitioner did not include the aforesaid expenses as part of its cost basis upon selling, in 1943 and in the course of its business, the afore-mentioned articles which were the object of said expenses, reporting therefore, in this 1943 tax return a sales profit of $15,103.05, which is more than it would have reported if it had anticipated that the respondent would reject the aforesaid expenses as a deduction for the year 1942.

"11.—That the petitioner in its motion for reconsideration of the deficiency originally notified on October 13, 1948, and which was connected with the taxable years 1942 and 1943, claimed a credit against the 1942 deficiency for the overpayment made in 1943 on account of error in the computation of the aforesaid item of $15,103.05.

"12.—That the respondent, as a result of the adjustment and allowances made in 1943, determined that the petitioner had made a tax overpayment for the year 1943 amounting to $8,512.96, without interest.

"13.—That notwithstanding the foregoing contentions, the respondent, in the computation of the aforesaid deficiency of $13,888.95 for the year 1942 notified on February 23, 1949, merely allowed petitioner a setoff credit of $4,500 against the 1942 deficiency, plus $1,337.27 as interest at the rate of 6 per cent per annum over said amount until February 28, 1949, on the ground that the petitioner had claimed refund within the term of four years fixed by law for only the amount of $4,500.

"14.—That as transpires from paragraphs 7, 12 and 13 of this stipulation, the credit claimed by petitioner in this proceeding is much less than the deficiency determined in the year 1942.

"15.—That the parties accept that the plaintiff incurred the expense of $15,103.05 in the year 1942, and they likewise accept that said item could have been deducted in the taxable year of 1943 for the purpose of determining the sales profit of petitioner's products.

"16.—That the only reason why respondent refused to credit any amount exceeding the aforesaid $4,500, plus interest, against the 1942 deficiency was that the petitioner did not claim the corresponding refund within the term of four years provided by law from the date payment was made."

Judge Polo of the Superior Court of Puerto Rico rendered judgment for the taxpayer, on the following grounds:

"It is true that the plaintiff did not apply for the refund of the tax overpayment corresponding to the year 1943 within the term of four (4) years determined by law; but the Treasurer of Puerto Rico, now Secretary of the Treasury, in order to decide the petition for refund timely made by the plaintiff, in connection with the $22,500 which it paid as bonus to its officers, opened for investigation plaintiff's taxable years 1942 and 1943 and determined that the item of $15,103.05 deducted by the plaintiff in 1942 as freightage and other expenses incurred by plaintiff should have been chargeable to inventory and not to operation expenses. Defendant's action is correct, and plaintiff so admits it. However, this resulted in a deficiency in the tax which plaintiff paid for the year 1942, and as a result, in a tax overpayment for the year 1943.

"The conclusion is inescapable that the 1942 deficiency and the 1943 overpayment arose out of the same transaction, and consequently, the conclusion of law arises that the plaintiff should be credited by way of recoupment against the deficiency imposed for the year 1942 the income tax which it overpaid in 1943 which corresponded to the deduction of $15,103.05, unduly made by the plaintiff in the first of said years, and which the defendant admits could have been deducted by plaintiff in the second year, for as it was held in *Compañía Azucarera del Toa* v. *Tax Court, Treasurer of Puerto Rico,* intervener, 72 P.R.R. 850 (at page 867) :—

" 'The petitioner is entitled, not to a favorable judgment for its 1936 overpayment, since, as has been graphically stated in regard to recoupment, said doctrine is a shield, not a sword, but, since a single transaction which brought about the 1935 deficiency is involved, it is entitled to be protected against payment of that deficiency in the amount of the 1936 over-payment. Although in *González Padín, supra,* we reached a different conclusion, it was due to the fact that there the taxpayer's claim did not arise out of the same transaction.'

"Recoupment . . . 'is founded on the equitable theory that all taxes and credits which arise out of the same transaction—whether the taxes or credits are paid or obtained in the same or in different years—should be adjusted without reference to the statute of limitations to prevent unjust enrichment for one party who is endeavoring to treat the same item inconsistently at different times.' *González Padín Co.* v. *Tax Court,* 66 P.R.R. 909."

The Secretary of the Treasury appealed from the pronouncement assigning the following errors:

"1. The lower court erred in concluding that 'the conclusion is inescapable that the 1942 deficiency and the 1943 overpayment arose out of the same transaction.'

"2. The lower court erred in applying to the case at bar the ruling of this Court in *Cía. Azucarera* v. *Tax Court,* 72 P.R.R. 850."

 We agree with the appellant that one of the essential requirements for the application of the equitable recoupment theory is that the deficiency, as well as the overpayment, the refund of which is barred, should arise out of the same transaction. We agree likewise that the juridical word which we know as "transaction" is hard to define when the same refers to taxation.

The first difficulty lies in the difference between the concept of transaction in matters of taxation and the concept of "transaction" in common law actions. Likewise it is different from the Romanic concept of compensation which our Civil Code contains. In the common law, "Transaction is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship." *Moore* v. *New York Cotton Exchange,* 270 U. S. 593, 610, 70 L. ed. 750, 757 (Sutherland), (1926). In some instances it has been employed in this sense in tax cases: *Artaphone Corporation* v. *Coale* 133 S. W.2d 343, 348 (Cooley) (1939); *United States* v. *Rodgers,* 94 F. 2d 666, 669 (Biggs)

(1938). In our civil law the similarity as to the subject (*materia*) gives way to the direct relation between the persons, and therefore, as soon as the juridical phenomenon takes place whereby a person is at the same time creditor and debtor of another, irrespective of the identity of the claims, it is legally decreed that one obligation is compensated by the other up to the extent of their respective credits, provided both obligations are determined and demandable, with the result that barred credits are not compensable: §§ 1149, 1156 of our Civil Code; 8 Manresa-Spanish Civil Code 712, 731, (Fifth revised edition of the Institute Editorial Reus), (1950).

By chance, it was the need to carry the equitable recoupment beyond the statute of limitation that brought about the restriction of its concept in taxation matters, making it depend more on the identity or similarity of the claims than on the debtor-creditor and creditor-debtor nexus of the persons involved. When we decided the case of *González Padín Co.* v. *Tax Court, supra,* at page 914, footnote 2, we made it clear that the concept "same transaction" "has a much more limited scope in tax litigation than in other cases." The identity in the claim results when a same item referring to a same property or fund is subject to two antithetic tax assessments which result in a deficiency on the one hand and an overpayment on the other, either by an erroneous application of the law or by an erroneous computation of the same item: *Cía. Azucarera* v. *Tax Court,* 72 P.R.R. 850, 865, *et seq.* (Todd, Jr.) (1951); *Bull* v. *U. S.,* 295 U. S. 247, 260–262, 79 L. Ed. 1421, 1427–1428 (Roberts) (1935); *Stone* v. *White,* 301 U. S. 532, 535–538, 81 L. Ed. 1265, 1270–1271 (Stone) (1937); *Rothensies* v. *Electric S. B. Co.* 329 U. S. 296, 300, 91 L. Ed. 296, 299 (Jackson) (1946); *Dixie Margarine Co.* v. *Commissioner,* 115 F. 2d 445 (Arant) (1940).

In the instant case the item which was notified as

the 1942 deficiency was the item of $15,387.41, which corresponded to freightage and other expenses connected with a cargo of bottles and other pertinent accessories which the petitioner erroneously considered as an ordinary expense of operation instead of an expense chargeable to the inventory of bottles, for which reason it erroneously deducted it as an expense in its 1942 income tax return; after selling those articles in 1943 it did not include the aforesaid expenses as part of its cost basis, reporting, therefore, in its income tax return for 1943, a sales profit of $15,387.41, which was more than it would have reported if it had anticipated that the respondent would disallow said item as a deduction for the year 1942. As may be seen, it is a single item, erroneously computed, which caused in 1942 a deficiency in the amount of sales because it had been included as an operation expense, and which resulted in 1943 in an overpayment in the sales profit for failure to include it in the cost basis. The item is the same, the fund identical. If the double assessment were allowed, the taxpayer would be held liable for a larger amount than would have normally been his share in the tax burden.

Inasmuch as the theory of equitable recoupment represents an evasion of the statutory limitation to request refund, the jurisprudence has also laid down the rule that recoupment does not lie in claims barred by a long period of time. *Rothensies* v. *Electric S. B. Co.*, *supra*, 329 U. S. p. 302; 91 L. Ed. p. 301. In the instant case the overpayment took place in 1943; the investigation of the Treasurer was in August, 1948; the final notice of the new determination was on February 23, 1949. We do not believe that the case, for the beneficial operation of equitable recoupment, is so unusual as to compel us to study this angle of the question in litigation.

The judgment appealed from will be affirmed.

Mr. Justice Ortiz did not participate herein.