Robert W. LANGLEY, Director of Revenue, State of Missouri, Petitioner,

v.

ADMINISTRATIVE HEARING COMMISSION, et al., Respondents.

No. 62541.

Supreme Court of Missouri,
En Banc.

April 26, 1983.

John Ashcroft, Atty. Gen., Richard L. Wieler, Asst. Atty. Gen., Jefferson City, for petitioner.

N. Kimosa Sindel, Richard J. Sheehan, St. Louis, for respondents.

HIGGINS, Judge.

The Director of Revenue seeks review of a decision of the Administrative Hearing Commission which determined that certain income of taxpayer Robert Baskowitz Enterprises, Inc., was derived from sales occurring partly within and partly without the State of Missouri, thus to permit the taxpayer the advantages of an apportionment formula for Missouri income tax purposes. The decision reversed a decision by the Director which determined that the transaction in question occurred wholly within the state and subjected all the income derived from such sales to Missouri income tax. The question is whether sales of goods by the taxpayer which were shipped from an out-of-state manufacturer to the taxpayer's customer in Missouri are transactions occurring partly within and partly without the State of Missouri. If so, the taxpayer is entitled to use of the apportionment formula, and the decision of the Administrative Hearing Commission would

be for affirmance; if not, the decision is for reversal. Reversed.

The facts are stipulated. Robert Baskowitz Enterprises, Inc., is a Missouri corporation whose office is in Clayton, Missouri, and whose income is derived solely from its contract with Anheuser-Busch, Inc., to supply it with glass bottles for Busch's breweries in St. Louis, Missouri, California, Texas, New Jersey and Florida. At issue is only that part of its income derived from the sale of bottles to the brewery in St. Louis, Missouri. Baskowitz purchased these bottles from manufacturers located outside Missouri and had them shipped directly to the St. Louis brewery without receipt or warehousing by Baskowitz.

The taxpayer applied the single-factor apportionment formula of section 143.040 RSMo 1969 (now section 143.451 RSMo 1978) to income tax returns filed for 1970, 1971 and 1972. It treated its sales of bottles to the St. Louis brewery as sales made partially within and partially without the state thus to make application of the fifty per cent apportionment formula; it treated its sales to out-of-state breweries as sales made wholly without the state thus to make no allocation of income to Missouri. The Director of Revenue found these returns deficient: The Director agreed that the sales of bottles which were shipped from out-of-state manufacturers to out-of-state breweries were transactions "partially within and partially without" the State of Missouri; it determined that the sales of bottles which were shipped from out-of-state manufacturers to the in-state brewery were transactions wholly within Missouri. The Administrative Hearing Commission agreed with the Director of Revenue that the sales of bottles by the taxpayer to out-of-state breweries were sales partially within and partially without the State of Missouri and subject to apportionment; it disagreed with the Director that the sales of bottles to the St. Louis Brewery were wholly within the state and wholly taxable to the state, and determined that such sales were also partially within and partially without the state and subject to apportionment. This appeal involves only that part of the Commission's decision which covers the taxpayer's sales to the St. Louis brewery.

■ Whether a taxpayer may elect to apportion income derived from the transaction of business in interstate commerce is "based on the 'source of income' test of section 143.451 and its predecessors and the long-standing judicial interpretation thereof." *Goldberg v. State Tax Comm'n*, 639 S.W.2d 796, 803 (Mo.1982). Under that test "the source of the income is the place where it was produced." *In re Kansas City Star Company*, 346 Mo. 658, 142 S.W.2d 1029, 1037 (Mo.1940).

■ Under the stipulation of fact for this appeal, the source of the taxable income in question was the contracted sales of bottles by the Missouri-based taxpayer to its customer in St. Louis, Missouri. Under the source test, the transaction which produced the taxable income occurred entirely in Missouri, and the income produced is thereby taxable in whole in Missouri and is not a subject for apportionment.

The taxpayer's argument is that the taxpayer's purchase of bottles from an out-of-state manufacturer for direct shipment to the taxpayer's customer in St. Louis caused the income from the resale which took place in Missouri to be relieved of a portion of Missouri income taxes by a formula applicable only to sales which occur partially within and partially without Missouri.

■ Retailers located in Missouri purchase raw materials, partially finished products and finished products from manufacturers and sellers within and without the state where a retailer maintains its business, renders sales and negotiates contracts for sales. Such arrangements and purchases (for resale) are not a part of the transaction by which the taxpayer sells or resells to its customers. The taxpayer must have a product to sell if it is to produce income; and the transaction which produces income is the sale by the taxpayer to its customer, not the preceding purchase by the taxpayer. Unless the taxpayer uses labor or capital outside this state in its transaction, the

income from the transaction must be regarded as produced from a source wholly within this state. *In re Kansas City Star Company,* 142 S.W.2d at 1037. Compare and distinguish *Artophone Corporation v. Coale,* 345 Mo. 344, 133 S.W.2d 343 (1939) and *International Travel Advisors, Inc. v. State Tax Commission,* 567 S.W.2d 650 (Mo. 1978).

The decision of the Administrative Hearing Commission is reversed with direction to reinstate the decision of the Director of Revenue that the sales of bottles by the taxpayer to its customer in St. Louis are wholly taxable by Missouri and subject to the additional income tax assessed for the years 1970, 1971 and 1972.

RENDLEN, C.J., and GUNN, BILLINGS, BLACKMAR and DONNELLY, JJ., concur.

WELLIVER, J., dissents in separate opinion filed.

WELLIVER, Judge, dissenting.

I respectfully dissent.

The principal opinion characterizes this case as one involving a purchase of bottles by Baskowitz and a subsequent resale of them to the Anheuser-Busch brewery in St. Louis. Unquestionably the transactions would be entirely within Missouri were such the case. The stipulation filed by the parties, however, belies such a characterization. This case does not involve two separate and distinct transactions. Baskowitz neither receives nor warehouses the bottles. Here the tightly interwoven dealings among Baskowitz, Anheuser-Busch, and out-of-state bottle manufacturers form a logically integrated whole that transcends state boundaries. The stipulated facts of this case, coupled with the required strict construction of taxation statutes in favor of the taxpayer, see *Goldberg v. State Tax Commission,* 639 S.W.2d 796, 802–03 (Mo. banc 1982); *Artophone Corp. v. Coale,* 345 Mo. 344, 353, 133 S.W.2d 343, 345 (1939), mandate a holding that these transactions occurred partially within Missouri and partially without.

The principal opinion relies upon *In re Kansas City Star Co.,* 346 Mo. 658, 142 S.W.2d 1029 (banc 1940), for the proposition that the taxpayer must employ labor or capital outside Missouri or its income will be regarded as produced from a source wholly within Missouri. *Kansas City Star* does indeed stand for that proposition. The Court in that case stated that

the source of income is the place where it was earned or produced—if by labor, the place where the labor was performed; if by capital, the place where the capital was employed. From this it follows that unless labor or capital is utilized outside this State in business transactions, the income therefrom must be regarded as arising wholly from sources in this State and is not allocable even though the transactions were done in interstate commerce.

*Id.* at 673, 142 S.W.2d at 1038. If it were clear that this statement embodies the standard to be applied in apportionment cases, I would not hesitate to concur in the principal opinion. Our cases, however, demonstrate that we cannot apply this statement so perfunctorily.

This language from *Kansas City Star* contradicts the statement in *Artophone,* a case the Court in *Kansas City Star* not only refused to overrule but cited with approval, that "the Legislature intended to define and point out what it meant by 'sources in this state' when it provided for allocation at the election of the taxpayer of income from sales which are 'transactions' partly within and partly without this State." *Artophone,* 345 Mo. at 357, 133 S.W.2d at 349. In other words, under *Artophone* the source of the income depends upon the situs of the transaction. That encompasses much more than simply the employment of labor or capital at a particular location. The Court in *Kansas City Star* itself said that "[t]he word 'transaction' as frequently used in the singular and plural, is practically all inclusive, and signifies any business activity productive of income." 346 Mo. at 672, 142 S.W.2d at 1037. It "is a word of flexible meaning" and "may comprehend a series of many occurrences, depending not so much upon

the immediateness of their connection as upon their logical relationship." *Artophone*, 345 Mo. at 355, 133 S.W.2d at 348. "Transactions" encompasses more than does a "contract," *id.*, or "sales," *International Travel Advisors v. State Tax Commission*, 567 S.W.2d 650, 654 (Mo. banc 1978).

It therefore is obvious that application of the "source of income" test has not been nearly as mechanical as the principal opinion portrays it. *Artophone* and *Kansas City Star* amply illustrate that "the statutory language has caused difficulty and the cases conflict in their constructions of it." *Goldberg*, 639 S.W.2d at 808 (Higgins, J., dissenting). "[T]wo distinct tests," and not one as the principal opinion implies "have been developed and used to determine whether specific income is from a Missouri source, non-Missouri source, or partly from each." *Id.* (Higgins, J., dissenting).

It is likewise apparent that the Department of Revenue, the state agency charged with enforcement of the tax laws, did not believe that the *Kansas City Star* test clearly constituted the controlling standard in apportionment cases. In 1967 the department promulgated regulation M.R. 210, which embodied an apportionment rule based upon shipping and destination points and made no mention of employment of labor or capital outside of Missouri. M.R. 210 provided:

> All income from any transaction whatever shall be reported in accordance with Section[s] 143.040 and 143.100(2) and (6), by each general business corporation.

> Where the elective allocation formula is used by a corporation taxable under Section 143.040 the following basis applies to the numerator of the allocation fraction:

> 1. All sales shipped from points in Missouri to points in Missouri. 100%

> 2. All sales shipped from points in Missouri to points outside of Missouri. 50%

> 3. *All sales shipped from points outside of Missouri to points in Missouri.* 50%

(Emphasis added.) That regulation was in effect during the tax years in question in

this case. The last tax year at issue here ended April 30, 1972, and the department has conceded before this Court that M.R. 210 was effective through 1972. *See* Brief of Petitioner-Respondent at 13, *Goldberg v. State Tax Commission*, 639 S.W.2d 796 (Mo. banc 1982). A regulation cannot "conflict with the sense and meaning of the statute," *State ex rel. River Corp. v. State Tax Commission*, 492 S.W.2d 821, 825 (Mo.1973), *overruled on other grounds, International Travel Advisors*, but M.R. 210, although it was questioned somewhat in *River Corp.*, was never declared invalid. In any event, M.R. 210 represents the position the Department of Revenue took during the years in question and to that extent should be given some weight in the determination here.

The legislature has now codified the substance of M.R. 210. Section 144.010(1)(7), RSMo Supp.1982, provides in relevant part:

> (7) . . . For the purposes of taxation under chapter 143, RSMo, a transaction involving the sale of tangible property is:

> (a) "Wholly in this state" and not "in commerce" if both the seller's shipping point and the purchaser's destination point are in this state;

> (b) "Partly within this state and partly without this state" and "in commerce" if: (i) the seller's shipping point is in this state and the purchaser's destination point is outside this state, or (ii) *the seller's shipping point is outside this state and the purchaser's destination point is in this state.* The purchaser's destination point shall be determined without regard to the F.O.B. point or other conditions of the sale.

(Emphasis added.) Although this statute was first passed in 1979 and thus cannot be relied on for the determination in this case, it evidences an unequivocal legislative intent that the transactions here and others like them be considered partially within and partially without the state. Under this statute "there would be no question that the transactions involved here are partially within and partially without the state." *Goldberg*, 639 S.W.2d at 803 n. 7. This is

true notwithstanding the language in *Kansas City Star* upon which the principal opinion relies.

The foregoing discussion demonstrates that there is some question in our law regarding the application of the "source of income" test for purposes of the apportionment formula. Historically any such ambiguity would have been resolved in favor of the taxpayer under the principle that taxation statutes must be strictly construed against the taxing authority. The parties did not address the application of M.R. 210 because, as in *Goldberg,* with which this case was originally argued, the arguments and briefs were directed toward the application of *M.V. Marine Co. v. State Tax Commission,* 606 S.W.2d 644 (Mo. banc 1980), to income tax apportionment. *See Goldberg,* 639 S.W.2d at 798 & n. 3. Since M.R. 210 was in effect during the tax years in question in this case, the state is hard pressed to argue that any other result should obtain. In any event, if the apportionment statute is to be construed strictly against the state, it cannot be said that the transactions in this case do not fall partially within Missouri and partially without. The principal opinion reaches a contrary conclusion only by characterizing this case as one involving two separate transactions and "in essence [applying] a 'sales,' rather than a 'transactions,' test." *Id.* at 803.

Furthermore, the principal opinion has no effect beyond a short period during the mid-1970's. The Department of Revenue followed M.R. 210 at least through 1972. Section 144.010(1)(7), RSMo Supp.1982, was effective on January 1, 1980, and controls with respect to corporate tax returns filed after that date. That section legislatively overrules the principal opinion's construction of the 'source of income' standard even as that construction is made. Consequently, the longest period the principal opinion could possibly affect would be the seven years between 1973 and 1980. As a practical matter, however, the affected period is much shorter. The general period of limitations for the assessment of a deficiency is three years, *see* § 143.711(1), RSMo 1978, and at this point has already run. Only if

the corporate taxpayer failed to include in its return an amount greater than twenty-five percent of the income properly includable in its gross income would the period of limitations be extended to six years, § 143.711(2), RSMo 1978, and only if the return is fraudulent or is not filed at all would the period of limitations be extended indefinitely, § 143.711(3), RSMo 1978. There are other contingencies that would extend the period beyond three years, but their occurrence is less than probable. Thus, even if the period is extended to six years, a deficiency now could be assessed only as far back as mid-1977. As a result, the principal opinion effectively will impact only a two and one-half year period between mid-1977 and January 1, 1980, when the new statute became effective.

Viewed as a whole, the transactions in this case occurred partially within Missouri and partially without. The decision of the Administrative Hearing Commission should be affirmed.