888

**PHILIP MORRIS, INC.,**
Appellant/Cross–Respondent,

v.

**DIRECTOR OF REVENUE,**
Respondent/Cross–Appellant.

No. 70276.

Supreme Court of Missouri,
En Banc.

Nov. 15, 1988.

As Modified on Denial of Rehearing
Dec. 13, 1988.

Stanley P. Weiner, Robert K. Kirkland, Kansas City, James W. Shea, New York City, for appellant/cross-respondent.

William L. Webster, Atty. Gen., Richard Wieler, Asst. Atty. Gen., Jefferson City, for respondent/cross-appellant.

BLACKMAR, Judge.

The taxpayer, Phillip Morris, Incorporated, is a Virginia corporation. At the times material to this appeal it owned all of the stock of Seven–Up Company, a Missouri corporation, which operates its own distinct business. The taxpayer also transacted its regular business in Missouri.

The federal constitution restricts the power of states to tax property outside of their borders. Interstate business must bear its fair share of taxation, however, and states may tax the income from interstate operations if they provide a fair ap-

portionment formula.[1] Missouri gives taxpayers two choices, a three-factor formula [2] based on the Multistate Tax Compact,[3] and a single-factor formula,[4] which allows apportionment based solely on the sales ratio.

This taxpayer elected the three-factor formula, which calls for the use of our long discarded skills in the addition and division of fractions. For a corporation organized under the law of another state and doing business in Missouri the three-factor apportionment may be expressed graphically as follows:

$$\text{MISSOURI TAXABLE INCOME} = \text{TOTAL BUSINESS INCOME} \times \frac{\frac{\text{MO PROPERTY}}{\text{ALL PROPERTY}} + \frac{\text{MO PAYROLL}}{\text{TOT. PAYROLL}} + \frac{\text{MO SALES}}{\text{TOT. SALES}}}{3}$$

The taxpayer elected this formula for the 1980, 1981 and 1982 tax years. The Director of Revenue assessed a deficiency, for which the taxpayer sought relief before the Administrative Hearing Commission in three particulars. The Commission found for the Director on two of the challenges and for the taxpayer on the third. Both the taxpayer and the director seek our review. We affirm the decision of the Commission in all respects.

## I.

The taxpayer elected to pay the salaries of 27 top officials of Seven–Up as a part of its own payroll. It issued the checks, made the payroll deductions such as for tax withholding and FICA, and supplied W–2 forms showing itself as employer. The officials so compensated were eligible for participation in the taxpayer's incentive compensation program along with key employees of the taxpayer and of other subsidiary corporations who were also paid on the taxpayer's payroll. The size of these bonus payments was determined by the taxpayer's management. The compensation paid the Seven–Up employees was reported by the taxpayer to the federal and state unemployment compensation authorities as part of its payroll.

The Seven–Up employees devoted all of their time to the business of Seven–Up. All worked at the Seven–Up office in Clayton, Missouri. Seven–Up reimbursed the taxpayer for the salary and bonus payments to its employees. The assigned reason for paying the salaries and bonuses of subsidiary employees on the taxpayer's payroll was to conceal the management salaries from subordinate employees of Seven–Up who might have access to payroll figures.

In contrast to its treatment of these payments for unemployment compensation

1. Generally, the due process and the commerce clauses preclude the states from imposing an income-based tax on value earned outside their borders. "[T]he linchpin of apportionability in the field of state income taxation is the unitary-business principle." *Mobil Oil Corp. v. Commissioner of Taxes,* 445 U.S. 425, 439, 100 S.Ct. 1223, 1232, 63 L.Ed.2d 510 (1980). "If a company is a unitary business, then a State may apply an apportionment formula to the taxpayer's total income in order to obtain a 'rough approximation' of the corporate income that is 'reasonably related to the activities conducted within the taxing state.'" *Exxon Corp. v. Wisconsin Dept. of Revenue,* 447 U.S. 207, 223, 100 S.Ct. 2109, 2120, 65 L.Ed.2d 66 (1980) (quoting *Moorman Mfg. Co. v. Bair,* 437 U.S. 267, 273, 98 S.Ct. 2340, 2344, 57 L.Ed.2d 197 (1978)). For a comprehensive review of the constitutional principles, *see, James v. International Tel. & Tel. Corp.,* 654 S.W.2d 865, 867–869 (Mo. banc 1983).

2. Section 32.200, art. IV, RSMo 1986, Secs. 10, 13, 15.

3. 1 State Tax Guide (CCH) Paragraph 351 (1988). The Compact incorporates the Uniform Division of Income for Tax Purposes Act, 7A U.L.A. 331 (1957). Missouri adopted the Multistate Tax Compact, at § 32.200, et seq., RSMo 1986.

4. Section 143.451, RSMo 1986.

purposes, the taxpayer did not include the payments in the numerator of the payroll factor of its own Missouri income tax return. The director disagreed, contending that the employees were the taxpayer's employees. The taxpayer argues that the employees were in fact the employees of Seven–Up, and not its own. It points to such cases as *Davis v. Human Development Corporation*, 705 S.W.2d 540 (Mo. App.1985) and *Howard v. Winebrenner*, 499 S.W.2d 389 (Mo.1973), for the proposition that the payment of salary is not always the determinant and that the right of control is paramount in determining who the actual employer is.

The taxpayer argues that the Administrative Hearing Commission inappropriately gave attention to regulation 12 CSR 10–2.075(40) of the Department of Revenue, reading as follows:

> The numerator of the payroll factor is the total amount paid in this state during the tax period by the taxpayer for compensation. The tests in article IV.14, to be applied in determining whether compensation is paid in this state are derived from the Model Unemployment Compensation Act. Accordingly, if compensation paid to employees is included in the payroll factor by use of the cash method of accounting or if the taxpayer is required to report such compensation under such method for unemployment compensation purposes, it shall be presumed that the total wages reported by the taxpayer to this state for unemployment compensation purposes constitute compensation paid in this state except for compensation excluded under sections (35) to (42) of this rule. The presumption may be overcome by satisfactory evidence that an employee's compensation is not properly reportable to this state for unemployment compensation purposes.

The taxpayer says that the presumption does not apply because the compensation is not "included in the payroll factor by the use of the cash method of accounting" and that the taxpayer is not "required to report such compensation ... for unemployment compensation purposes," saying that its reporting was inadvertent. It says that the evidence shows that the employees are Seven–Up's employees, and not its employees, because they perform all of their duties for the benefit of Seven–Up, and that that corporation has the sole right of control over them.[5]

■ We conclude, without regard to any presumption, that the finding of the Administrative Hearing Commission is supported by the record [6] and must be sustained. The taxpayer decided how it would pay these employees. The objective indicia are consistent with the finding that the employees are employees of the taxpayer. They participate in an incentive program controlled by the taxpayer's management. The Commission is justified in accepting these factors at face value. It could consider the reimbursement by Seven–Up to the taxpayer simply as an accounting transaction, designed to provide accurate operational information but not changing the employer or the nature of the employment.

The taxpayer argues that the sole right of control is in Seven–Up. When the subsidiary is wholly owned, the ultimate right of control resides in the parent. The Seven–Up employees have only such discretion as the taxpayer chooses to allow them. A parent corporation may elect to use its own employees in managing and operating its subsidiaries.

The Commission's findings of fact are supported by competent evidence on the whole record. We are not disposed to disturb these findings.

---

5. Seven–Up, in its own tax return elected the single-factor formula, in which payroll is not a material figure.

6. Section 621.193, RSMo 1986, provides that "the decision of the administrative hearing commission shall be upheld when authorized by law and supported by competent and substantial evidence upon the whole record...." *See also, James v. TRES Computer Service, Inc.,* 642 S.W. 2d 347, 348 (Mo. banc 1982).

## II.

In the promotion of its international operations, the taxpayer created a wholly-owned subsidiary, Phillip Morris International Finance Corporation, known as PMIFCo, for the purpose of attracting local capital for investment in the taxpayer's foreign subsidiaries and affiliates. PMIFCo issued debentures which could be surrendered to the taxpayer in exchange for the taxpayer's common stock. The debentures were sold to overseas investors and the proceeds were lent to the taxpayer's foreign operators. All have been converted into stock by the purchasers, and the taxpayer is now the owner of the debentures. PMIFCo collects interest on the money it has lent, and shows the interest it owes on the debentures as a credit to the taxpayer on its books. The director would include this interest in the "business income" portion of the apportionment formula.

The taxpayer does not argue that this interest is not business income[7] from a unified operation, which may be apportioned to Missouri by the three-factor computation.[8] It argues, rather, that there is no increase in its net worth, but simply a bookkeeping transaction in which PMIFCo shows a credit to the taxpayer on its books and a corresponding debit to itself.

The purpose of the debenture transaction is to promote the taxpayer's overseas operations. Borrowers from PMIFCo pay interest on their borrowings, and this interest inures to the benefit of the taxpayer. It makes no difference that the taxpayer may allow PMIFCo to retain the interest in its own bank account. The taxpayer could take the interest to itself at any time. This is sufficient to support the tax.[9]

The taxpayer points out that the interest item is not shown on its consolidated federal income tax return because it is an intra-company transaction which does not produce a net increase in the assets of the corporate complex. The taxpayer, however, has elected to file a separate Missouri return rather than a consolidated return. Had it filed a consolidated return, income of subsidiaries, including PMIFCo, would be included in the business income figure on the Missouri return. The interest item represents an increase in its own assets and a diminution of the assets of its subsidiary, which is not a Missouri taxpayer. This increase may properly be taxed on its separate Missouri return.

## III.

Rothman's is a large tobacco company operating outside the United States. Rembrandt is a holding company which owns 44% of the stock of Rothman's. The taxpayer acquired 50 percent of the stock of Rembrandt. The controlling interest in Rothman's is owned by one Rupert, a resident of South Africa. The taxpayer received dividends as a result of its 22 percent equity interest in Rothman's. The question is whether these dividends constitute business income from an integrated operation, subject to Missouri tax.

The companies have no common directors or common employees. There has been no exchange of technology, no information sharing agreement, and no purchases or sales between the two entities. There is evidence that the taxpayer purchased its interest in Rembrandt to forestall R.J. Reynolds Company, a competitor, who was also interested in acquiring an interest in Rembrandt.

7. Business income is defined as: "... income arising from transactions and activity in the regular course of the taxpayer's trade or business and includes income from tangible and intangible property if the acquisition, management, and disposition of the property constitute integral parts of the taxpayer's regular trade or business operations." Section 32.200, art. IV, § 1.1, RSMo 1986.

8. *Exxon Corporation v. Wisconsin Department of Revenue,* 447 U.S. 207, 100 S.Ct. 2109, 65 L.Ed.2d 66 (1980); *Container Corporation of America v. Franchise Tax Board,* 463 U.S. 159, 103 S.Ct. 2933, 77 L.Ed.2d 545 (1983).

9. *Diedrich v. Commissioner,* 643 F.2d 499, 503 (8th Cir.1981), *Aff'd,* 457 U.S. 191, 102 S.Ct. 2414, 72 L.Ed.2d 777 (1982). *See also,* Treas. Reg. § 1.451–2 (1979).

The director claims that the taxpayer had a business purpose in acquiring the Rembrandt stock and that the resulting income is business income from its unitary operation. The Commission rejected the contention and we conclude that its decision is supported by the evidence. The Commission considered such cases as *ASARCO, Inc. v. Idaho State Tax Commission*, 458 U.S. 307, 102 S.Ct. 3103, 73 L.Ed.2d 787 (1982), and *F.W. Woolworth Co. v. Taxation and Revenue Department*, 458 U.S. 354, 102 S.Ct. 3128, 73 L.Ed.2d 819 (1982), and must have determined that the case was factually nearer to those authorities than to the cases cited in Note 8, *supra*.[10] Although a business advantage might be imagined in acquiring an interest in a company in a similar business or in keeping that interest out of the hands of a competitor, the record shows merely a minority interest with no indicia of control. The Commission properly classified this holding as an investment. Administrative findings supported by the evidence are entitled to deference, whether they favor the taxpayer or the director.

The director observes that the taxpayer has borrowed substantial amounts of money from various lenders, and that interest paid on these borrowings has been deducted as a business expense on its Missouri income tax return. It suggests that some of the borrowed funds have been used to purchase the Rembrandt holdings, and that this constitutes an admission that the purchase had a business purpose. The record shows no claim that the taxpayer's interest deduction should be reduced to reflect any such borrowings. Without such a showing, the borrowings are at most a factor to be weighed by the Administrative Hearing Commission, which apparently did not deem them to have controlling force.

The decision of the Administrative Hearing Commission is affirmed in its entirety.

BILLINGS, C.J., ROBERTSON, RENDLEN and HIGGINS, JJ., and PREWITT, Special Judge, concur.

WELLIVER, J., concurs in part and dissents in part in separate opinion filed.

DONNELLY, J., not sitting.

WELLIVER, Judge, dissenting in part and concurring in part.

I respectfully dissent as to the conclusion reached in Point I of the principal opinion, but concur in the balance of the opinion.

The record reflects that appellant taxpayer Philip Morris issues checks for payment of part of the salary of twenty-seven top executives of its subsidiary Seven–Up, all headquartered in Missouri. Taxpayer pays all withholding taxes and unemployment compensation and is reimbursed for every penny expended. The record is undisputed that the twenty-seven executives have no duties with appellant taxpayer and that they are in fact Seven–Up Missouri employees and that Seven–Up does compute all their compensation into their tax returns.

The explanation offered for utilizing this complicated form of executive salary payment is that its purpose is to keep all lower level employees from knowing the full extent of executive salary payments, which if known, might upset all of the lower level salary scales in the company.

My first concern is the double taxation resulting on this portion of the salaries of the twenty-seven executives, which I do not believe was either contemplated or authorized by the legislature.

---

10. The U.S. Supreme Court in *ASARCO, supra* 458 U.S. at 326, 102 S.Ct. at 3114, dismissed "corporate purpose" as the determining factor for a unitary business because such a definition would in effect eliminate any due process limitation on state taxation in that all investments by a corporation can be said to be related or contributing to the corporation's business. In

*F.W. Woolworth, supra* 458 U.S. at 369, 102 S.Ct. at 3137, dividends from four foreign subsidiaries of Woolworth, three of which were wholly owned, were not apportionable because the Court found there was very little functional integration or centralization of management between Woolworth and the subsidiaries.

Secondly, I have reservations and mixed emotions about judicially imposing a tax on an ingenious and patently legal method for reimbursing what I perceive to be required executive donations to corporate political PACs.

In all other respects, I concur in the majority opinion.