**LUHR BROS., INC., Appellant,**

v.

**DIRECTOR OF REVENUE, STATE of MISSOURI, Respondent.**

No. 71440.

Supreme Court of Missouri,
En Banc.

Nov. 14, 1989.

Rehearing Denied Dec. 12, 1989.

Robert F. Dwornick, Michael G. Goldstein, Clayton, for appellant.

William L. Webster, Atty. Gen., Mark S. Siedlik, Asst. Atty. Gen., Randy Bakewell, Acting Gen. Counsel, Missouri Dept. of Revenue, Jefferson City, for respondent.

COVINGTON, Judge.

Luhr Bros., Inc., is an Illinois corporation engaged in the business of marine construction and heavy work, which includes excavation and earth moving in connection with highway construction and building of levees and dams. Luhr Bros. is qualified to do business in Missouri and twenty other states. At times relevant to this appeal, the taxpayer operated in Missouri doing marine construction and earth work.

In 1958 Luhr Bros. entered together with Midwest Construction Company into a venture designated as Midwest Construction Company and Luhr Bros., Inc., a Nebraska general partnership headquartered in Nebraska City, Nebraska, also the headquarters of Midwest. Each general partner owned 50 percent of the partnership, which engaged in marine construction, rock work, and dirt work. At the inception Luhr Bros. supplied needed capital.

As is customary in the construction industry, Mr. Luhr signed each completion bond application submitted by the partnership. Luhr Bros. submitted its financial statement with each bond application. As general partner, Luhr Bros. was liable on the bonds, and its assets, as well as Midwest's, were available to the partnership so that the partnership could obtain necessary bonding in order to secure contracts.

Luhr Bros. occasionally sold construction equipment to the partnership, although it is uncertain within what time period, and leased twelve barges, two tug boats and a dragline from the partnership during the years in question, all at fair market or rental value. Luhr Bros. and the partnership did not serve as subcontractors of one another.

Midwest's chief executive officer, Robert Knisely, acted as managing partner in the partnership. Mr. Knisely consulted with Luhr Bros.' chief executive officer, Alois Luhr, an expert in the business of earth moving. Mr. Knisely initiated discussions with Mr. Luhr on all but small jobs. Mr. Knisely and Mr. Luhr discussed the bidding of projects, primarily by telephone. If a complex job were involved, Mr. Luhr sometimes traveled to the partnership job sites

to counsel Mr. Knisely with respect to whether the bid should be made and for what amount. Although Mr. Knisely finally determined which jobs the partnership would bid, Mr. Knisely sought Mr. Luhr's advice in making final decisions.

Other than Alois Luhr, none of Luhr Bros.' employees was involved in the partnership's activities other than for the occasional sale of construction equipment and the leasing of barges, tug boats and dragline. Luhr Bros. was not involved in preparation and maintenance of financial and accounting records of the partnership although the partnership did provide Mr. Luhr with a weekly report that updated the status of the partnership's progress on its various contracts. Hiring, firing and training of partnership employees were conducted by or under the supervision of the partnership.

Luhr Bros. timely filed its Missouri corporate income tax returns for 1982, 1983, and 1984. Luhr Bros. elected to use the three-factor apportionment formula. § 32.200, RSMo 1986. Luhr Bros. did not apportion any part of its distributive share of the partnership income to Missouri; it treated this income as "non-business income" allocable only to its commercial domicile in Illinois. *See*, § 32.200, art. IV, subd. 1(1)–(2), (5), RSMo 1986. The Director of Revenue audited Luhr Bros.' Missouri income tax returns for the years 1982, 1983, and 1984 and determined that Luhr Bros.' share of the partnership income, as well as Luhr Bros.' share of partnership property, payroll and sales, should be included in the three-factor apportionment formula for purposes of determining taxable income. The Director assessed income taxes due for the years 1982, 1983 and 1984, with additions, penalties, and interest. Luhr Bros. sought relief before the Administrative Hearing Commission. The Commission found for the Director. From that decision Luhr Bros. appeals. This Court affirms the decision of the Commission.

The question posed is whether Luhr Bros.' distributive share of income from the partnership constitutes taxable "business income." Luhr Bros. contends that its operations and activities and the operations and activities of the partnership are separate and distinct business enterprises and thus do not constitute a unitary business for purposes of Missouri allocation and apportionment. This Court determines the question on the record presented and will uphold the decision of the Administrative Hearing Commission if the decision is authorized by law and supported by competent and substantial evidence upon the whole record.

■ Generally the due process and commerce clauses prohibit the states from imposing an income-based tax on value earned outside their borders; states may tax the income from interstate operations, however, if the states provide a fair apportionment formula. Missouri allows the taxpayer to elect a three-factor formula, § 32.200, art. IV, subds. 10, 13, 15, RSMo 1986, based on the Multistate Tax Compact, § 32.200, et seq., RSMo 1986, or a single-factor formula, § 143.451, RSMo 1986, which permits apportionment based solely on the sales ratio. Luhr Bros. elected the three-factor formula under which "business income" for the purpose of income apportionment is defined as "income arising from transactions and activity in the regular course of the taxpayer's trade or business and includes income from tangible and intangible property if the acquisition, management, and disposition of the property constitute integral parts of the taxpayer's regular trade or business operations." § 32.200, art. IV, subd. 1(1), RSMo 1986. "Non-business income" is defined as "all income other than business income." § 32.200, art. IV, subd. 1(5), RSMo 1986.

■ The "unitary business" principle is the "linchpin of apportionability" in the field of state income taxation. *Mobil Oil Corp. v. Comm'r of Taxes,* 445 U.S. 425, 439, 100 S.Ct. 1223, 1232, 63 L.Ed.2d 510 (1980). "If a company is a unitary business, then a State may apply an apportionment formula to the taxpayer's total income in order to obtain a 'rough approximation' of the corporate income that is 'reasonably related to the activities con-

ducted within the taxing State.'" *Exxon Corp. v. Wisconsin Dep't of Revenue*, 447 U.S. 207, 223, 100 S.Ct. 2109, 2120, 65 L.Ed.2d 66 (1980) (quoting *Moorman Mfg. Co. v. Bair*, 437 U.S. 267, 273, 98 S.Ct. 2340, 2344, 57 L.Ed.2d 197 (1978)). To avoid taxation a taxpayer must show that the income arose from a "discrete business enterprise" rather than from the unitary business operation in the taxing state. *AS-ARCO, Inc. v. Idaho State Tax Comm'n*, 458 U.S. 307, 317, 102 S.Ct. 3103, 3109, 73 L.Ed.2d 787 (1982); *Mobil Oil Corp.*, 445 U.S. at 439–441, 100 S.Ct. at 1232–1234. This Court more comprehensively reviewed the constitutional principles in *James v. Int'l Tel. & Tel. Corp.*, 654 S.W.2d 865, 867–68 (Mo. banc 1983).

In support of Luhr Bros.' argument that its income from the partnership is non-business income arising from a "discrete business enterprise," Luhr Bros. relies principally on United States Supreme Court cases *ASARCO, Inc. v. Idaho State Tax Comm'n*, 458 U.S. 307, 102 S.Ct. 3103, 73 L.Ed.2d 787 (1982), and *F. W. Woolworth Co. v. Taxation and Revenue Dep't*, 458 U.S. 354, 102 S.Ct. 3128, 73 L.Ed.2d 819 (1982), and on this Court's holding in *Philip Morris, Inc. v. Director of Revenue*, 760 S.W.2d 888 (Mo. banc 1988). In *ASARCO*, a New Jersey corporation engaged in mining activities in Idaho also owned major interests in subsidiaries engaged in substantially the same business as the taxpayer. In the closest case, the subsidiary sold approximately 35 percent of its output to the taxpayer at arm's length prices. The taxpayer provided certain management services to the subsidiary's board of directors. The taxpayer's directors on the subsidiary's board had veto power, but ASARCO was unable to control the actions of the board. The state court found a unitary business relationship. In addition, the state appeals court applied an incorrect standard in analysis of the case. The United States Supreme Court reversed.

In *F. W. Woolworth*, the United States Supreme Court determined that no unitary business relationship existed between the parent and its four subsidiaries. Woolworth owned 100 percent of the stock of three subsidiaries and 52.7 percent majority interest in a fourth subsidiary. As in *ASARCO* there was no vertical integration. The taxpayer controlled major financial decisions such as the amount of dividends to be paid by the subsidiaries and the subsidiaries' incursion of substantial debt. On the other hand, although the taxpayer maintained one or more common directors with some of the subsidiaries, there was slight upper level management participation in the operation of the subsidiaries. There was no centralized purchasing and no evidence of any other economies of scale. Moreover, the state court applied an incorrect legal standard in analyzing the case.

In *Philip Morris* the income in dispute was dividends received by *Philip Morris* on its 22% stockholding of Rothmans, a major tobacco producing concern. The companies had no common directors or common employees. There was no exchange of technology, no information sharing agreement, and no purchases or sales between the two entities. *Philip Morris, Inc.*, 760 S.W.2d at 891–92. The record reflected merely a minority interest with no indicia of control. This Court held that the dividends were non-business income.

Luhr Bros.' reliance on *ASARCO, F. W. Woolworth*, and *Philip Morris* is misplaced not only because the cases are distinguishable but also because the United States Supreme Court has enlarged the unitary business concept in *Container Corp. of America v. Franchise Tax Board*, 463 U.S. 159, 103 S.Ct. 2933, 77 L.Ed.2d 545 (1983). In *Container Corp.*, the Supreme Court upheld California's determination that a Delaware corporation, doing business in California and elsewhere, and its overseas foreign subsidiaries constituted a "unitary business" for the purpose of applying California's franchise tax laws. After review of the due process and commerce clause prohibitions, the Court emphasized that the unitary business concept is not actually unitary: "There are variations on the theme, and any number of them are logically consistent with the underlying principles motivating the approach." *Container Corp.*, 463 U.S. at 167, 103 S.Ct. at 2941.

The Court recalled that in *Butler Bros. v. McColgan,* 315 U.S. 501, 62 S.Ct. 701, 86 L.Ed. 991 (1942), the Court recognized that "the unitary business principle could apply, not only to vertically integrated enterprises but also to a series of similar enterprises operating separately in various jurisdictions but linked by common managerial or operational resources that produced economies of scale and transfers of value." *Container Corp.,* 463 U.S. at 167, 103 S.Ct. at 2941. These principles require that the out-of-state activities of the purported unitary business must be related in some "concrete way" to the instate activities. "The functional meaning of this requirement is that there be some sharing or exchange of value not capable of precise identification or measurement—beyond the mere flow of funds arising out of a passive investment or a distinct business operation—which renders formula apportionment a reasonable method of taxation." *Id.* at 166, 103 S.Ct. at 2940. A bond of ownership or control that unites the purported unitary business is also required. *Id.*

In reaching its judgment that the taxpayer and its foreign subsidiaries constituted a unitary business, the Court relied on a number of factors. The factors included the taxpayer's assistance to its subsidiaries in obtaining used and new equipment and in filling personnel needs that could not be met locally, the substantial role played by the taxpayer in loaning funds to the subsidiaries and guaranteeing loans provided by others, the considerable interplay between the taxpayer and its foreign subsidiaries in the area of corporate expansion, the substantial technical assistance provided by the taxpayer to the subsidiaries, and the supervisory role played by the taxpayer's officers in providing general guidance to the subsidiaries, all of which, in combination, demonstrated that the state court reached a conclusion "within the realm of permissible judgment." *Id.* at 179–180, 103 S.Ct. at 2947–2948.

The United States Supreme Court in *Container Corp.* emphasized both the flow of capital resources from the taxpayer to its subsidiaries through loans and loan guarantees and the managerial role played by the taxpayer in its subsidiaries' affairs. In so doing the Court distinguished *F. W. Woolworth,* noting that the "difference lies in whether the management role that the parent does play is grounded in its own operational expertise and its overall operational strategy." *Id.* at 180 n. 19, 103 S.Ct. at 2948 n. 19. The Court observed that the business "guidelines" established by Container for its subsidiaries, the "consensus" process by which the taxpayer's management was involved in the subsidiaries' business decisions, and the sometimes uncompensated technical assistance provided by the taxpayer, all pointed to the sort of operational role the Court found lacking in *F. W. Woolworth. Id.* The Court also noted that potential control is relevant in the unitary business issue both to whether or not the "components of the purported unitary business share that degree of common ownership which is a prerequisite to a finding of unitariness, and also to whether there might exist a degree of implicit control sufficient to render the parent and the subsidiary an integrated enterprise." *Id.* at 177 n. 16, 103 S.Ct. at 2947 n. 16.

Relying upon the broadened definition of unitary business set forth in *Container Corp.,* the Administrative Hearing Commission found evidence of exchange of value both in the types of jobs in which the two business entities engaged and in the leadership they shared. The Commission found that the partnership and the taxpayer had an "exchange of value not capable of precise identification or measurement—beyond the mere flow of funds arising out of a passive investment," the fundamental characteristic of a unitary business relationship as defined in *Container Corp. Id.* at 166, 103 S.Ct. at 2940.

■ There is substantial and competent evidence in the record to support the Commission's findings. The facts, recited above in detail, first reflect that Luhr Bros. and the partnership engaged in similar business activities involving excavation and rock work for highway and marine construction. The facts further evidence an exchange of value, more than a passive investment, between Luhr Bros. and the

partnership through Luhr Bros. assisting in obtaining and guaranteeing bonds and executing contracts. Moreover, Arthur A. Baltz, secretary-treasurer of Luhr Bros., testified that he could not measure the dollar value of these activities to the partnership, nor, in turn, to Luhr Bros., in terms of the additional financial commitment the partnership was able to maintain as a result of Luhr Bros.' involvement.

The record reflects that Luhr Bros. also played a management role in the partnership's affairs. The process by which Mr. Luhr was involved in the partnership's business decisions and in providing assistance to the partnership is grounded in Luhr's own operational expertise gained through his engagement in similar business activities. There is no evidence in the record of Luhr's being compensated for his assistance. Upon being asked to measure the dollar value of Mr. Luhr's advice to the partnership and, hence, to Luhr Bros., Mr. Baltz replied that he did not know whether one could measure a dollar value, concluding that Mr. Knisely paid "quite a bit of attention" to Mr. Luhr's opinion. Considering all the evidence, there is, thus, substantial evidence of a degree of implicit control sufficient to render Luhr Bros. and the partnership an integrated enterprise.

The Commission correctly concluded that Luhr Bros.' distributive share of income from the partnership constitutes taxable business income.

■ Closely related to Luhr Bros.' contention that its income is non-business income is its assertion in its second point that there is no "rational relationship" between the partnership income which the director attributed to Missouri and the "intrastate values" of Luhr Bros. in Missouri. As Luhr Bros. notes, due process considerations require not only "a 'minimal connection' or 'nexus' between the interstate activities and the taxing State," but also a " 'rational relationship between the income attributed to the State and the intrastate values of the enterprise.' " *Exxon Corp.*, 447 U.S. at 219–220, 100 S.Ct. at 2118–2119 (quoting *Mobil Oil Corp.*, 445 U.S. at 436,

437, 100 S.Ct. at 1231, 1232). The taxpayer's extremely brief argument in support of its point, however, relies exclusively upon its contention that the taxpayer and the partnership were not a unitary business. Having addressed the unitary business question in response to Luhr Bros.' first point, the Court finds the taxpayer's second point to be without merit.

The decision of the Commission is affirmed.

BLACKMAR, C.J., ROBERTSON, RENDLEN, HIGGINS, BILLINGS, JJ., and REINHARD, Special Judge, concur.

HOLSTEIN, J., not participating because not a member of the Court when the case was submitted.