The DOW CHEMICAL
COMPANY, Appellant,

v.

DIRECTOR OF REVENUE, STATE OF
MISSOURI, Respondent.

No. 71010.

Supreme Court of Missouri,
En Banc.

April 17, 1990.

W.H. Bates, William K. Waugh, III, Karen Iverson, Kansas City, for appellant.

William Webster, Atty. Gen., Richard L. Wieler, Asst. Atty. Gen., Jefferson City, for respondent.

Juan D. Keller, Brenda Talent, St. Louis, for amicus Brown Group, Mo. Chamber of Commerce, Associated Industries.

CHARLES SHANGLER, Special Judge.

The petition for review is from the final decision of the Administrative Hearing Commission denying the complaints of Dow Chemical Company that the Director of Revenue improperly assessed a corporate tax deficiency for years 1975 to 1980 and improperly rejected the Dow claim for refund for each of those years.

## I.

### THE FACTUAL STATEMENT

Dow Chemical Company is a Delaware corporation with headquarters and principal business location in Michigan. It operated then, as now, in foreign as well as domestic locales. The domestic United States operations are conducted by divisions of the Delaware corporation. The foreign operations are conducted through some 100 subsidiaries incorporated in various countries throughout the world. Dow manufactures and sells chemicals, plastics, metals, agricultural products, pharmaceuticals and related products worldwide. With the exception of pharmaceuticals, these lines of business were conducted in Missouri during 1975 to 1980. [Certain pharmaceuticals manufactured under Dow patents, however, were sold in Missouri.]

Dow elected to file its Missouri corporation income tax returns under the allocation and three-factor apportionment formula of the Multistate Tax Compact, Section 32.200, arts. III and IV, RSMo 1986.

In the tax returns for each of the tax years of 1975 to 1980, Dow excluded from its income subject to apportionment deemed dividends from its Domestic International Sales Corporation [DISC], as defined in I.R.C. § 995(b) (1986), and Subpart F income, as defined in I.R.C. § 951, et seq. (1986). The Director of Revenue disallowed the exclusion of these items from Missouri taxable income subject to apportionment.[1] In the tax returns for each of those years, Dow included as income subject to Missouri apportionment factors an item of federal taxable income known as Section 78 gross-up, as defined in I.R.C. § 78 (1986). Dow later protested that this income should have been excluded from Missouri taxable income,[2] and made claims for refund. The Director of Revenue disallowed the claims.

On its Missouri corporation income tax returns for 1975 to 1980, Dow also reported items of royalties, interest and capital gains as nonbusiness income not subject to apportionment.[3] The royalties were derived from licensing patents and other intangible expertise and technical information. The interest was from loans and advances to Dow's foreign subsidiary corporation, or from investment of its idle working capital. The capital gains and losses were from the sale of capital assets. None of the royalties or interest were derived from any licensee, or person or corporation headquartered, domiciled or doing substan-

**1.**

| Year | DISC Dividends | Subpart F. Income |
|------|---------------|-------------------|
| 1975 | $145,949,401 | $ 8,939,784 |
| 1976 | 61,789,869 | 51,198,763 |
| 1977 | 94,586,108 | 79,536,093 |
| 1978 | 71,846,696 | 73,053,897 |
| 1979 | 94,778,469 | 111,674,624 |
| 1980 | 126,796,850 | 103,202,629 |

**2.**

| Year | Section 78 Income |
|------|-------------------|
| 1975 | $ 3,638,828 |
| 1976 | 38,730,613 |
| 1977 | 64,254,090 |
| 1978 | $60,710,357 |
| 1979 | 84,890,973 |
| 1980 | 76,782,126 |

**3.**

| Year | Income from Rents, Royalties, Interest and Capital Gains |
|------|----------------------------------------------------------|
| 1975 | $ 83,376,016 |
| 1976 | 87,836,847 |
| 1977 | 108,153,559 |
| 1978 | 101,375,341 |
| 1979 | 202,552,914 |
| 1980 | 234,153,095 |

tial business in Missouri. None of the capital assets were located in Missouri.

The Director of Revenue disallowed these exclusions reported as nonbusiness income [and so not subject to apportionment] and adjusted the royalties, interest and capital gains to *business income* [subject to apportionment]. On appeal, the Administrative Hearing Commission determined that the Director of Revenue properly denied the exclusions of the royalties, interest and capital gains from the income tax base subject to apportionment—with the exception of the gain from the sale of certain securities. The Administrative Hearing Commission found that this income was derived from its unitary business of producing and distributing diversified chemical products, the same lines of business Dow conducts in Missouri, and so constituted business income attributable to Missouri for apportionment and taxation. The gain from the sale of the securities, the Administrative Hearing Commission found, was derived from a discrete business enterprise, unrelated to the Dow activity in Missouri, and so was nonbusiness income not subject to apportionment under the Multistate Tax Compact.

Dow brings this petition for review of the final decision of the Administrative Hearing Commission. This Court has exclusive jurisdiction. Mo. Const. art. V, § 3.

## II.

## DEEMED DIVIDENDS, ROYALTIES, INTEREST, CAPITAL GAINS, AS CORPORATE INCOME NOT TAXABLE BECAUSE NOT DERIVED FROM MISSOURI SOURCES

Dow argues that under the rule of decision that now governs, the test as to whether a corporation taxpayer may apportion its interstate income for purposes of the Missouri income tax is the source of income standard enacted in Section 143.451, RSMo 1986. Dow asserts that none of the

deemed dividends, or of the royalties, interest and capital gains, were income derived from Missouri sources, and hence, none are subject to apportionment as income from interstate business for taxation by Missouri.

Our law allows a corporation that does business both within and without the state alternatives for the allocation and apportionment to Missouri of a percentage of the taxpayer's total income. The corporation has the option under Section 143.451.2 of a single-factor formula that rests apportionment solely on the sales or business ratio. The corporation has the other option of the Multistate Tax Compact formula under Section 32.200, *et seq.*, RSMo 1986, to apportion its business income according to a three-factor formula of property, payroll and sales to derive the taxable Missouri income of the corporation. *Philip Morris, Inc. v. Director of Revenue*, 760 S.W.2d 888, 889 (Mo. banc 1988); *Luhr Bros., Inc. v. Director of Revenue*, 780 S.W.2d 55, 57[1] (Mo. banc 1989).

Dow elected to file its Missouri corporation income tax returns for years 1975 to 1980 under the multistate three-factor apportionment formula. The deemed dividends [except for the gross-up income for which return was later claimed] and royalties, interest and capital gains were not included in the business income subject to apportionment for taxation. The Administrative Hearing Commission determined that these items of income [with one exception] derived to Dow from its unitary business of the production and distribution of chemical products, and so constituted *business income* subject to apportionment to Missouri for taxation.

On this review Dow does not dispute that the items it excluded from the returns constituted *business income,* as defined in the compact, the product of a unitary business.[4] Dow argues, rather, that none of

---

**4.** Indeed, the agreed statement of facts upon which the Administrative Hearing Commission rendered decision stipulated that the Dow business activity in Missouri [with small exception] was of the same kind as the Dow business activity throughout the United States and its foreign subsidiaries.

It was expressly stipulated that Dow and the subsidiaries which paid the royalty and interest income at issue constituted a unitary business,

these items of income were derived from sources within Missouri, and so were subject to neither apportionment nor taxation under Section 143.451.1—no matter what the formula employed.[5] Dow invokes the authority of *Goldberg v. State Tax Commission*, 639 S.W.2d 796 (Mo. banc 1982), for this premise.

As enacted by Missouri, the Multistate Tax Compact accorded the prerogative to apportion to "[a]ny taxpayer having income from business activity which is taxable both within and without this state...." Section 32.200, art. IV, sec. 2. The first case to construe that provision—as to when income is subject to allocation and apportionment under the three-factor formula of the compact—was actually a claim for the right of apportionment under the single-factor formula of Section 143.451.2. That statute provides that to determine the Missouri taxable income of a corporation, the taxpayer shall include "all income from sources within this state." *Id.* And where a corporation derives income from the transaction of business partly in Missouri and partly in another state or states, the income on that part of the transaction that occurs in Missouri is subject to taxation. Section 143.451.2(1). The taxpayer in *M.V. Marine Co. v. State Tax Comm'n*, 606 S.W.2d 644 (Mo. banc 1980), contended that since their income was earned partly within and partly without the state, it was subject to apportionment under the source of income test as applied by the single-factor formula of Section 143.451. The Director of Revenue disagreed and contended that the income was from sources wholly within Missouri, and so not subject to apportionment.

*M.V. Marine* answered that the enactment of the Multistate Tax Compact rendered both the source of income test as well as the judicial interpretations of that

statute obsolete. Whereas under the superseded test the prerogative of a taxpayer to apportion rested on the showing that the income was earned partly within and partly without the state, under the compact apportionment rested on whether the taxpayer had income from business activity taxable both within and without the state. *Id.* at 649[6]. *M.V. Marine* then delivered its essential rationale:

> With this legislative declaration in mind, we conclude that although taxpayers still are given an option on the *method* of allocation they may use, all other questions reference apportionment of income are to be resolved by reference to the Compact.

*Id.*

Two years later, in *Goldberg v. State Tax Comm'n*, 639 S.W.2d 796 (Mo. banc 1982), this Court reexamined *M.V. Marine* and discarded its essential rationale as dictum. *Goldberg* also found that *M.V. Marine* misread the legislative purpose in the enactment of the compact which did not intend thereby to annul the source of income test of Section 143.451. *Goldberg* then delivered its essential rationale.

> We hold that the determination whether a taxpayer may elect to apportion income derived from the transaction of business in interstate commerce should be based upon the "source of income" test of § 143.451 and its predecessors and the longstanding judicial interpretation thereof.

*Id.* at 803.

It is this essential holding of *Goldberg* that Dow adopts for its premise that—the determination of the Administrative Hearing Commission that the interest, royalties and capital gains were income from a uni-

---

and that the capital gains and losses were from property used in its trade or business. There was no comparable agreement as to the deemed dividends distributions, nor did the Administrative Hearing Commission decision make any determination as to whether those distributions constituted *business income* within the apportionment and taxation scheme of the compact.

5. The agreed statement of facts also stipulated that none of the royalties or interest were derived from any licensee, or person or corporation headquartered, domiciled or doing substantial business in Missouri, and that none of the capital gains or losses during those years [1975 to 1980] were from assets located in Missouri. There was no comparable stipulation as to the deemed dividend distributions.

tary business [6] and so subject to apportionment as *business income* under the compact, notwithstanding—under authoritative judicial opinion they were not taxable under the *source of income* test of Section 143.451.1. To sustain argument, Dow cites three opinions of this Court on the source of income statute, all of them pre-*Goldberg*, but none of them involving apportionment.[7] This Court has had occasion since *Goldberg* to consider the source of income test, but only in terms of the single-factor formula.[8] "The longstanding judicial interpretation" of Section 143.451 that *Goldberg* posits as the guide for whether a taxpayer may elect to apportion income derived from interstate commerce, therefore, has nothing to say as to how the source of income test that statute enacts impinges on the election to apportion under the compact.

It is under the compact, however, that Dow elected to apportion its income for Missouri taxation for the years 1975 to 1980. It is in this perspective that we assess the contention by Dow that under our judicial precedents on the source of income test, the interest, royalties and capital gains derived from activity outside the state were not from sources within Missouri, and so not subject to its taxation.

As a general constitutional principle, a state may not tax value earned outside its borders. *ASARCO, Inc. v. Idaho State Tax Comm'n*, 458 U.S. 307, 315, 102 S.Ct. 3103, 3108, 73 L.Ed.2d 787 (1982). The due process and commerce clauses do not allow a state to tax income that arises from interstate activity unless there is a minimal connection or nexus between the interstate activity and the taxing state and a rational relationship between the income attributed to the state and the intrastate value of the enterprise. *Exxon Corp. v. Wisconsin Dept. of Revenue*, 447 U.S. 207, 220, 227–228, 100 S.Ct. 2109, 2118, 2122–2123, 65 L.Ed.2d 66 (1980); *Luhr Bros.*, 780 S.W.2d at 60[4].

A state may tax the income from interstate operations, however, by a formula that fairly apportions the income to the activity of the taxpayer within the taxing state. For this purpose, "the Constitution imposes no single formula on the States." *Container Corp. v. Franchise Tax Bd.*, 463 U.S. 159, 164, 103 S.Ct. 2933, 2939, 77 L.Ed.2d 545 (1983). Thus, any formula [whether single or multi-factor] that undertakes to apportion to a taxing state income of aspects of interstate activity within the state implicates constitutional principles and is freighted with those considerations. *Moorman Mfg. Co. v. Bair*, 437 U.S. 267, 272, 98 S.Ct. 2340, 2343, 57 L.Ed.2d 197 (1978); *Exxon Corp.*, 447 U.S. at 219, 100 S.Ct. at 2118. A formula that rests apportionment on the determination that the multistate taxpayer is a unitary business—a business whose activity outside the taxing state so functionally integrates with its activity within the taxing state as to make impossible the separate measurement of each to the multistate enterprise—satisfies the constitutional requirements of nexus and of a tax fairly related to the services provided by the taxing state. *ASARCO*, 458 U.S. at 316–317, 102 S.Ct. at 3109–3110.

**6.** The logic of this argument would have extended also to deemed dividends distributions, had they been determined to be business income under the compact, and hence income subject to apportionment.

**7.** *Union Electric Co. v. Coale*, 347 Mo. 175, 146 S.W.2d 631 (1940), a pre-compact decision, held that dividend income received by a domestic public utility from foreign corporations, none of which employed capital within Missouri, was not from a source within this state, and so not subject to Missouri taxation.

*Petition of Union Elec. Co. of Missouri*, 349 Mo. 73, 161 S.W.2d 968 (banc 1942), a pre-compact decision, held that dividend and interest income received by a Missouri corporation from investments in foreign corporation was not income "from sources within this state" for purposes of Missouri corporate net income tax.

*Brown Group, Inc. v. Administrative Hearing Comm'n*, 649 S.W.2d 874 (Mo. banc 1983), a post-compact decision, held that royalties income received by a New York corporation with its principal place of business in Missouri from a Japanese corporation was not derived from sources within the state, and so not subject to Missouri income tax.

**8.** *See, e.g., Langley v. Administrative Hearing Comm'n*, 649 S.W.2d 216 (Mo. banc 1983), and *Hayes Drilling, Inc. v. Director of Revenue*, 704 S.W.2d 232 (Mo. banc 1986).

The unitary business principle, in effect, is the very "linchpin of apportionability" in the field of state income taxability. *Mobil Oil Corp. v. Commissioner of Taxes,* 445 U.S. 425, 439, 100 S.Ct. 1223, 1232, 63 L.Ed.2d 510 (1980); *Luhr Bros.,* 780 S.W.2d at 57[2].

Dow does not contend against the determination by the Administrative Hearing Commission that the interest, royalties and capital gains were income from a unitary business, but insists that under the source of income rule of Section 143.451, reinstated by *Goldberg* [the argument goes] as the test for the apportionment of income from interstate activity by whatever formula, the interest, royalties, capital gains [and dividends] received from sources outside the state are simply not subject to Missouri taxation.

■ We read *Goldberg* to restore the source of income test as the basis for the apportionment of income from interstate business under the single-factor formula, with which it is *in pari materia.* We read *Goldberg* to leave unaffected the apportionment scheme of the compact—unrelated by either function or principle to the source of income statute.

There is no doubt that the source of income test and the single-factor apportionment formula are parts of an integral scheme for the taxation of the income of corporations.[9] *A.P. Green Fire Brick Co. v. Missouri State Tax Comm'n,* 277 S.W.2d 544, 546 (1955); Note, *Missouri's Single-factor Formula is Based on Sales,* 18 St. Louis U.L.J. 474, 485–486 & n. 100 (1974). A taxpayer may elect to apportion income from interstate transactions or business, but only if that income has at least some of its source in Missouri. *Artophone Corp. v. Coale,* 345 Mo. 344, 133

S.W.2d 343, 349[10] (1939). The source of income section imposes the tax, and the apportionment formula merely computes the tax imposed. *International Travel Advisors, Inc. v. State Tax Comm'n,* 567 S.W.2d 650, 654[1] (Mo. banc 1978); *Wohl Shoe Co. v. Director of Revenue,* 771 S.W.2d 339, 341[1] (Mo. banc 1989).

It was early decided the source of income section, as a tax statute, is subject to the canon of strict construction in favor of the taxpayer and against the taxing authority. *Artophone,* 133 S.W.2d at 347[2–4]. It is by now settled that the tax is imposed on transactions of business wholly or partly done in this state. *International Travel Advisors,* 567 S.W.2d at 654[1]; *Hayes Drilling, Inc. v. Director of Revenue,* 704 S.W.2d 232, 234[1] (Mo. banc 1986). It is by now also settled that *source of income,* under this statutory formulation, means the place where the income was earned or produced; if from labor, the place where the labor was performed; if from capital, the place where the capital was employed. *In re Kansas City Star Co.,* 346 Mo. 658, 142 S.W.2d 1029, 1037 (banc 1940); *Bass Pro Shops, Inc. v. Director of Revenue,* 746 S.W.2d 97, 98 (Mo. banc 1988). Thus, under "longstanding judicial interpretation," the income of a corporation produced by labor or use of capital altogether outside Missouri is not from a source in this state, and not subject to its taxation. *Langley v. Administrative Hearing Comm'n,* 649 S.W.2d 216, 217[1] (Mo. banc 1983).

We agree with *Dow* that were the source of income statute the basis for the right to apportion under the Compact as well as under the single-factor formula, then under the *present* "longstanding judicial interpre-

**9.** The source of income provision was enacted in the present form of Section 143.451 in 1927. The apportionment formula component was enacted two years later. Income from the transaction of business done partly in this state and partly in other states is to be included as income from sources within this state. Section 143.451.2. If the portion of income generated in the various states cannot be segregated, then an amount of income is allocated to Missouri that will distribute to the state "a portion based upon

the portion of the transaction in this state and the portion in such other state or states." Section 143.451.2(1). If the interstate income of the corporation cannot be segregated, the taxpayer may elect to apportion its income by means of the single-factor formula. Section 143.451.2(2)(b). *See generally* Comment, *The Single Factor Method of Interstate Allocation of Corporate Net Income in Missouri: The Worst of All Possible Worlds?* 22 St. Louis U.L.J. 614 (1979).

tation" of Section 143.451, the interest, royalties, capital gains and dividends were properly excluded from the apportionment formula of the compact for years 1975 to 1980, and so not subject to Missouri income tax. *See supra* nn. 7 & 9.

The source of income concept as a basis for state taxation of income from interstate activity is by now vestigial. It is a remnant of the early days of the income tax when interstate commerce was not yet made to pay its own way. Its premises for deriving the locally taxable income base of corporations with multistate operations—geographical and transactional accounting—are crude, imprecise and inefficient as implements of a legislative tax policy. *General Motors Corp. v. District of Columbia*, 380 U.S. 553, 561, 85 S.Ct. 1156, 1161, 14 L.Ed.2d 68 (1965); J.R. Hellerstein, *I State Taxation: Corporate Income and Franchise Taxes* § 8.10[3] at 368–69 (1983). That method is not only imprecise, but also "subject to manipulation ... and often ignores or captures inadequately the many subtle and largely unquantifiable transfers of value that take place among the components of a single enterprise." *Container Corp.*, 463 U.S. at 164, 103 S.Ct. at 2939; *Mobil Oil*, 445 U.S. at 438, 100 S.Ct. at 1232. The economic reality is, however, that the "factors of profitability" of an interstate corporation arise "from the operation of business as a whole," so that the local tax base can only be fairly calculated as a component of the unitary business. *Id.; Container Corp.*, 463 U.S. at 165, 103 S.Ct. at 2940.

The "longstanding judicial interpretation" of source of income under Section 143.451, however, has remained statute-bound and unresponsive to the unitary business principle. In our decision, *In re Kansas City Star Co.*, 142 S.W.2d at 1037, we acknowledged early that under "[w]ell considered decisions of the United States Supreme Court" [then extant], the unitary business principle sanctioned "the allocation of [a business' income] for taxation when parts of its productive activities are conducted in other states." The Court, nevertheless, found the provisions of the source of income statute controlled and rested decision there. It was a tacit concession that the geographical situs premise of the source of income principle and the "sourceless" premise of the unitary business principle are not commensurable.[10] *Mobil Oil*, 445 U.S. at 444, 100 S.Ct. at 1235.

The issue here, however, is not the validity of source of income under Section 143.-451 or of its single-factor formula adjunct, or even of the judicial interpretations of those statutes.[11] The issue here is how, in

10. That is because a valid apportionment formula, by its very nature as a calculator of that portion of the total income of an interstate business that represents the local tax base, can never be the means to identify the exact geographical source of business profits. It yields only a "rough approximation" of the corporate income that is reasonably conducted within the taxing state and "attributes" that income to that state for its taxation. *Moorman Mfg. Co.*, 437 U.S. at 273, 98 S.Ct. at 2344; *Exxon Corp.*, 447 U.S. at 223, 100 S.Ct. at 2120; *Luhr Bros.*, 780 S.W.2d at 57[2].

11. Our source of income test, single-factor formula scheme for taxation of interstate commerce does not rest validity upon its approval or disapproval of the constitutional principles of nexus and rational relationship between the income attributable to the taxing state and the value of the intrastate enterprise. Instead, as apportionment under our law rests on whether the statutory definitions of transaction partly within and partly without the state are met, it is no coincidence that our decisions lack discussion of those constitutional principles that give validity to any state taxation scheme. The case discussions allude occasionally to "connection" and "nexus" to prove the situs of the transaction under the statutory requirements. The constitutional analysis to justify an attributed income from interstate activity for apportionment to Missouri for taxation is absent from those decisions. *See, e.g., Wohl Shoe Co. v. Director of Revenue*, 771 S.W.2d 339 (Mo. banc 1989); *State ex rel. River Corp. v. State Tax Comm'n*, 492 S.W.2d 821 (Mo.1973).

It is not unexpected that the single-factor apportionment formula—which is not a taxing statute under the source of income scheme [*Wohl Shoe Co.*, 771 S.W.2d at 341[1]]—does not undertake by constitutional analysis to capture more income from interstate activity for taxation by Missouri than the source of income statute to which it appends—and which is a taxing statute [*International Travel Advisors v. State Tax Comm'n*, 567 S.W.2d 650, 654 (Mo. banc 1978)]—allows. It is not unconstitutional

the wake of *Goldberg,* the source of income statute impinges on the three-factor apportionment formula of the Compact. We determine that it does not.

Our decisions, before and after *Goldberg,* construe the source of income and single-factor apportionment components as an integral scheme for taxation of a corporation, *in pari materia.* The apportionment formula under the scheme so interdepends with the source of income test as to restrict the interstate activity of a corporation subject to taxation by Missouri to income with a geographical nexus with our state.

The Compact, however, takes into account the entire business income of a multistate enterprise to determine the income apportionable to Missouri for its taxation.[12] The *business income* definition of the compact is a lean paraphrase for *income from a unitary business.* It gives effect to the concept that in the case of a multistate business enterprise, the contributions to income from functional integration [and other factors] are from the operation of the business as a whole, and so justify the taxation by a state of extraterritorial earnings by a fair apportionment formula. *AS-ARCO,* 458 U.S. at 316, 102 S.Ct. at 3109; *Container Corp.,* 463 U.S. at 178–179, 103 S.Ct. at 2947–2948.[13] Thus, the nexus that validates the compact formula as an instrument of constitutional state taxation of interstate activity is not only a tie between the state and the interstate activity, but also a tie between the state and the entire income of the " 'unitary business' of which the taxed enterprise's activities in the taxing jurisdiction form one part." *Id.* at 165, 103 S.Ct. at 2940.

The *source of income* motion is extraneous to both the power of a state to tax income from a unitary business and to the formula that determines the local tax base for its apportionment. In *Mobil Oil,* 445 U.S. at 425, 100 S.Ct. at 1226, the taxpayer contended [as does Dow here] that under the compact apportionment formula dividend income received from overseas and extrastate subsidiaries were from foreign sources and so not taxable by Vermont. The court responded:

> *The argument that the source of the income precludes its taxability runs contrary to precedent.* In the past, apportionability often has been challenged by the contention that income earned in one State may not be taxed in another if the source of the income may be ascertained by separate geographical accounting. The Court has rejected that contention so long as the intrastate and extrastate activities formed part of a single unitary business. [Citations omitted]. In these circumstances, the Court has noted that separate accounting, while it purports to isolate portions of income received in various States, may fail to account for contributions to income resulting from functional integration, centralization of management, and economies of scale [citations omitted]. *Because these factors of profitability arise from the operation of the business as a whole, it becomes misleading to characterize the income of the business as having a single identifiable 'source'.*

[Emphasis added.] *Id.* at 438, 100 S.Ct. at 1232; *see also Container Corp.,* 463 U.S. at 165, 103 S.Ct. at 2940; *Shell Oil Co. v. Iowa Dept. of Revenue,* 488 U.S. 19, 109 S.Ct. 278, 284–285, 102 L.Ed.2d 186 (1988).

---

for a state to undertax income from interstate business activity.

**12.** Section 32.200, art. IV, sec. 1(1) defines *business income* to mean:

[I]ncome arising from transactions and activity in the regular course of the taxpayer's trade or business and includes income from tangible and intangible property if the acquisition, management, and disposition of the property constitute integral parts of the taxpayer's regular trade or business operations.

It is *business income* that the compact apportions for taxation by a three-factor formula. Section 32.200, art. IV, sec. 9.

**13.** This Court in *James v. International Tel. & Tel. Corp.,* 654 S.W.2d 865, 868 (Mo. banc 1983), adopted the unitary business principle as the functional definition of *business income* for apportionment of income under the compact three-factor formula. In terms of the unitary business principle, "dividends, interest income, and capital gains are treated in the same manner." *Id.*

The apportionment formula of the compact, which functions on income from the operation of the business as a whole to derive the local tax base and not on income from geographical transactions only, therefore, is not *in pari materia* with source of income under Section 143.451.

■ The option to apportion income under the Multistate Tax Compact operates in favor of a taxpayer "having income from business activity which is taxable both within and without this state." Section 32.200, art. IV, sec. 2. *M.V. Marine* displaced the source of income test of Section 143.451 by the compact test both as to apportionment under the single-factor formula of Section 143.451.2 and the three-factor formula of the compact. *Goldberg* reinstated the source of income test for apportionment under its adjunct, the single-factor formula. We do not read *Goldberg*, whatever the tenor of disagreement, to either nullify the three-factor formula or the test for its operation. *Goldberg*, after all, deals with a claim for apportionment under the single-factor formula under the source of income scheme. *Goldberg* leaves the Multistate Tax Compact intact as a legislative enactment.

This Court has decided three cases under the apportionment formula of the compact since *Goldberg*. The first of them, rendered within a year of that decision and by the author of *Goldberg*, notes—and only parenthetically:

> A taxpayer whose income is subject to apportionment could, and still may, apportion that income by using either the three-factor formula established in article IV of the Multistate Tax Compact, § 32.200, art. IV, RSMo 1969 (now codified in RSMo 1978), or the single-factor formula established in § 143.040 RSMo 1969 (current version at § 143.451, RSMo 1978). In this case ITT chose to apportion its income pursuant to the three-factor formula.

*James v. International Tel. & Tel. Corp.*, 654 S.W.2d 865, 866 n. 1 (Mo. banc 1983).

14. It is of notice that article IV, to which the *James* footnote alludes, enacts not only the apportionment formula of the compact, but also

James makes no mention of *Goldberg*.[14] *Philip Morris, Inc. v. Director of Revenue*, 760 S.W.2d 888 (Mo. banc 1988), and *Luhr Bros., Inc. v. Director of Revenue*, 780 S.W.2d 55 (Mo. banc 1989), both cite *James*, both affirm the option of the taxpayer to elect between the single-factor formula and the three-factor formula, and both [as does *James*] give effect to the unitary business principle as the crux of apportionability in state income taxation. Neither *Philip Morris* nor *Luhr Bros.* mentions *Goldberg*.

■ The effect of *Goldberg* is to restore the source of income test and its single-factor formula adjunct as a complete and integral scheme of apportionment, and to leave unaffected as enacted the separate Multistate Tax Compact test for apportionability and its three-factor formula implement. *See generally*, Comment, *State Taxation of Corporation Income: Formulary Apportionment of Income Earned in Interstate Commerce*, 48 Mo.L.Rev. 719, 764 (1983) (authored by K.G. Bakewell). The source of income statute does not preclude taxation by Missouri of the dividends, royalties, interest and capital gains received by Dow from extraterritorial payors, nor the determination under the compact formula that they were aspects of the total business income of its unitary operations and so subject to apportionment under that scheme.

### III.

### DISC, SUBPART F AND SECTION 78 GROSS–UP INCOME AS DIVIDENDS

■ As required by the Internal Revenue Code, Dow included in its federal taxable income as *dividends* three kinds of undistributed income—DISC, Subpart F and Section 78 gross-up income. The DISC income was from the activity of a domestic international sales corporation [DISC] and the Subpart F and Section 78 income derived from the activity of Dow subsidiaries domiciled in foreign countries. These

the test for the right to elect to apportion under the Compact.

items of undistributed, and hence deemed, income are treated as *dividends* by the Internal Revenue Code and includable as such in the federal income tax return. I.R.C. §§ 995(b); 951–952; 78 (1986).[15]

In Missouri, a corporation is taxed on its Missouri taxable income, defined in Section 143.431.1, RSMo 1986, as,

> so much of its federal taxable income for the taxable year, with the modifications specified in subsections 2 and 3 of this section, as is derived from sources within Missouri as provided in section 143.451.

To arrive at Missouri taxable income, Section 143.431.2 authorizes the corporation to subtract "to the extent included in federal taxable income, corporate dividends from sources within Missouri." The Director did not allow the subtraction of the deemed distribution of dividends from the federal taxable income to arrive at the Missouri taxable income. The Director determined that since these deemed distributions were included in the federal taxable income, not because they were actual dividends, but because the law treats them as such, they were only fictive and so not eligible for subtraction from the federal taxable income as "corporate dividends from sources within Missouri" under Section 431.431.2.

The decision of the Director does not explain the nature of that income—if not as dividends—nor adjudicate it as Missouri income for purposes of allocation and apportionment, but simply consigns it to Missouri taxable income.

Dow argues that the Director must accord the term *dividend* in Section 143.431.2 the same meaning that it has in the federal income tax laws. We agree.

Section 143.091, RSMo 1986, provides:

> Any term used in sections 143.011 to 143.996 shall have the same meaning as when used in a comparable context in the laws of the United States relating to federal income taxes, unless a different meaning is clearly required by the provisions of sections 143.011 to 143.996.

Those sections do not define DISC, Subpart For Section 78 gross-up income or dividends. Nor do they require a meaning different than that given by federal income tax laws. *Goldberg,* 606 S.W.2d at 178–79; *King v. Procter & Gamble Distrib. Co.,* 671 S.W.2d 784, 785–86 (Mo. banc 1984); *see supra* n. 4. The undistributed income required by federal law to be included in the federal taxable income as *dividends* and under Section 143.431.2 is, to the ex-

---

**15.**

*DISC Income*

The Domestic International Sales Corporation [DISC] is a tax avoidance device enacted in 1971 to reduce income taxes for United States exporters and thereby to increase their competitive advantage. It was meant to redress the deteriorating trade and balance of payments predicament of the United States. The law invited exporters to create a separate domestic corporation, a DISC, that would have no assets, or employees, or other business function than to lower taxes. The earnings of the export sales were divided between the DISC and the parent corporation. The DISC was not subject to federal income tax. Instead, one-half of the DISC profits were deemed distributed back to the parent company as dividends and were taxed currently as such to that shareholder even though the earnings were not actually distributed. The balance of the earnings were not taxable to the shareholders until either the earnings were actually distributed, the shareholders disposed of its DISC stock or the corporation ceased to qualify as a DISC. *See* Bittker & Eustice, *Federal Income Taxation of Corporations* § 17.14 (5th ed. 1987); Hudec, *Reforming GATT Adjudication Procedures: The Lessons of*

*the DISC Case,* 72 Minn.L.Rev. 1443, 1446 (1988).

*Subpart F Income*

The Internal Revenue Code establishes tax consequences for United States residents who own ten percent or more of the voting stock of foreign subsidiaries that are also owned more than fifty percent by United States residents. I.R.C. § 951, Subpart F, requires a United States shareholder to report its pro rata share of income attributable to the foreign subsidiary as if paid as a dividend. I.R.C. § 960(a)(1).

*Section 78 Gross–Up Income*

A United States corporation that pays income tax to a foreign country may either deduct that tax or take a credit for the amount of the tax against its federal income tax liability. I.R.C. § 901. The gross-up computation "is a figure that the Federal Government 'deems' [the taxpayer] to have received for purposes of part of [the taxpayer's] federal foreign tax credit calculation. It 'is treated [for this purpose] as a dividend in the same manner as a dividend actually received by the domestic corporation from the foreign corporation.'" *F.W. Woolworth Co. v. Taxation & Revenue Dept. of New Mexico,* 458 U.S. 354, 372, 102 S.Ct. 3128, 3139, 73 L.Ed.2d 819 (1982) (citations omitted).

tent that they are attributed as "from sources within Missouri," subtractable from the federal taxable income to arrive at Missouri taxable income. The decision of the Administrative Hearing Commission that the deemed distributions of the DISC, Subpart F and Section 78 gross-up income do not constitute corporate *dividends* within the meaning of Section 143.431.2 is an error of law and for our correction on this review. *James v. Tres Computer Systems, Inc.*, 642 S.W.2d 347, 348[1–2] (Mo. banc 1982).

The question remains, nevertheless, whether under the terms of the Multistate Tax Compact as informed by constitutional principles of apportionment, the dividends from the DISC, Subpart F and Section 78 gross-up deemed distributions to Dow for years 1975 to 1980 were business or nonbusiness income. That determination yet remains for the Commission, and the decision is remanded for that purpose. If the dividends are found to be business income, then the Commission shall apportion, under the three-factor formula of the Compact, the dividends attributable to Missouri sources and subtract them from the federal taxable income as Section 143.431.2 directs.[16] If the dividends are found to be nonbusiness income, the Director shall allocate them to the commercial domicile of the Dow enterprise under Section 32.200, art. IV, sec. 7. In that event, the Director shall refund to Dow the taxes paid on the Section 78 gross-up income for years 1975 to 1980.

## IV.

## CONCLUSION

The decision of the Administrative Hearing Commission that the interest, royalties and capital gains were improperly excluded by Dow from its gross income for the purpose of computing its Missouri income tax liability for years 1975 to 1980 is affirmed.

The decision of the Administrative Hearing Commission [and Director] that the deemed distributions of DISC, Subpart F and Section 78 gross-up income were not dividends attributable to Missouri—and hence not subtractable from the federal taxable income to arrive at Missouri taxable income—is reversed and remanded. The Administrative Hearing Commission is directed to determine whether the deemed dividend distributions for years 1975 to 1980 were business or nonbusiness income within the terms of the Multistate Tax Compact. If business income, the Commission shall apportion under the compact formula the dividends attributed to Missouri and subtract them from the federal taxable income as Section 143.431.2 directs. If nonbusiness income, the Director shall refund to Dow the taxes paid on the Section 78 gross-up income for those years.

The proceeding is remanded to the Commission also to adjust the apportionment formula in light of this decision.

All concur.

BLACKMAR, C.J., not sitting.

16. In terms of Sections 143.431 and 143.451, the income apportioned to Missouri for its taxation under the compact formula is the functional equivalent of income "derived from sources within Missouri." It is income *attributed* to Missouri from the total business activity of the Dow enterprise, and not from Missouri as an exact geographical situs, so that the *source of* income terminology of those sections is commensurable with the income derived for taxation under the compact apportionment formula. What is not commensurable with the compact formula is *source of income* under Section 143.-451 [as judicially interpreted] as the determinant of the interstate income subject to apportionment to Missouri under taxation.